THE HARTFORD-CONNECTICUT TRUST COMPANY, TRUSTEE *v.* THE PUTNAM PHALANX ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued March 6—decided April 22, 1952

*William J. Galvin, Jr.,* with whom was *Mark W. Levy,* for the appellant (named defendant).

*Bruce W. Manternach,* with whom was *Pomeroy Day,* for the appellee (plaintiff).

O'SULLIVAN, J. The plaintiff trustee brought this action to foreclose a mortgage executed and delivered by The Putnam Phalanx, hereinafter called the defendant, to secure an issue of its bonds. The matter was referred to a state referee, who, after holding hearings thereon, filed his report. The defendant's remonstrance was overruled and judgment of foreclosure by sale was rendered by the court. The defendant has appealed.

The referee found the following facts: On April 29, 1926, the defendant executed a series of bonds, aggregating $35,000, in denominations of $1000, $500, and $100. They were payable to bearer and carried at-

tached interest coupons. The bonds were to mature on March 1, 1949. To secure their payment, the defendant mortgaged to the plaintiff as trustee its property at 314 Washington Street, Hartford. Bonds totaling $27,300 were subsequently sold in varying amounts to various purchasers, most of whom were, at the time, members of the defendant organization. The remainder of the issue, amounting to $7700, was never sold.

In the latter part of 1932, those holding bonds aggregating more than two-thirds of the outstanding issue effectively waived in writing, as to all bonds, the payment of interest due on and subsequent to March 1, 1933. This action conformed to an express provision in the indenture. On March 7, 1933, the defendant voted not to pay any more interest and its secretary so advised the plaintiff. When the bonds matured, certain bondholders presented them to the plaintiff for collection.

The defendant has filed forty-two assignments of error. Most of them are obscure, some are unintelligible, many are repetitious, and several overlap, thus violating our rule concerning prolixity, specificity and repetition. Practice Book, 1951, § 408; *Perdue* v. *Zoning Board of Appeals,* 118 Conn. 174, 175, 171 A. 26. In spite of this, we have endeavored to segregate and classify those assignments which appear to represent the defendant's real contentions.

One of its main claims is that the bonds executed on April 29, 1926, constituted a substitution for others issued in 1924 and that the latter were secured by a mortgage different from that which the plaintiff seeks to foreclose. On the strength of this assertion, the defendant maintains that there is a fatal variance between the allegations of the complaint and the proof. The weakness of this claim is perfectly obvious. It lies in the defendant's rejection of facts found by the

referee and in its insistence upon making use of facts which his report did not incorporate and which the court properly refused to add thereto. While there was submitted to the referee evidence that, prior to 1926, the defendant had bought a piece of property on Chapel Street in Hartford and had issued bonds dated March 1, 1924, to finance the purchase price, further evidence developed that this realty was thereafter sold at a profit, that the defendant then called and paid the outstanding 1924 bonds, and that the issue of 1926 was completely divorced from the Chapel Street transaction and was connected solely with the Washington Street property. The referee found on credible evidence that bonds to a total of $27,300 of the 1926 issue were sold at their face value and that their payment was secured by the mortgage described in the complaint. Questions of fact supported by credible evidence may not be disturbed on review. *Lalley* v. *Bridgeport,* 96 Conn. 501, 503, 114 A. 678. There is no variance between the allegations of the complaint and the proof.

The defendant further contends that the court erred in denying four of its motions. These were filed before the court acted on the remonstrance. The motions were (1) to recommit to the referee because of newly discovered evidence, (2) for a new trial because of newly discovered evidence, (3) for permission to add a more specific statement to the answer and to amend its prayers for relief on the cross complaint, and (4) for judgment on the pleadings. These motions cover thirteen printed pages of the record and their obscurity has us again at a disadvantage. We interpret the defendant's position respecting them to be this: The so-called newly discovered evidence consists of the defendant's own minute books and certain public records in the town clerk's office; these books and rec-

ords, it is claimed, will establish that the bonds of 1926 were substituted for the issue of 1924; and, with this established, the proof would be at fatal variance with the complaint's allegations. The claim now under discussion ties in somewhat with the defendant's first contention, upon which we have commented, and it is unnecessary to repeat what has previously been said on this matter of variance. Nor do we determine whether a motion for a new trial was a motion which properly could be filed before the court acted on the remonstrance and report. It is sufficient to say that the present action was instituted on August 22, 1949. The four motions, each predicated upon the theory of newly discovered evidence, were filed about two years later. During all of that intervening period, the minute books were in the exclusive possession of the defendant and the public records in the town clerk's office were available to it. The lack of the most ordinary diligence on the defendant's part, causing it to overlook evidence, so to speak, right under its nose, was sufficient warrant for the court to deny the motions. See *Crook* v. *Clarke,* 124 Conn. 317, 318, 199 A. 428.

A further contention is that the referee gave undue weight to the testimony of George A. Long, a witness called on behalf of the plaintiff. It might be observed, in passing, that Long was an active member of the defendant in the twenties. He was an original signer of the trust indenture of 1926 and is the only person now living who participated in its execution. His unique position undoubtedly counted heavily with the referee. But, that aside, it is futile to assign error involving the weight of testimony or the credibility of witnesses. *McMahon* v. *Malloy,* 109 Conn. 505, 506, 147 A. 26; *Finlay* v. *Swirsky,* 103 Conn. 624, 638, 131 A. 420; Maltbie, Conn. App. Proc., p. 137.

Another contention is that the court erred in ren-

dering judgment of foreclosure because the purchasers of the bonds were members of the defendant. In this connection two points are urged. The first is that the money paid to the defendant by the original bondholders was, in reality, "membership subscriptions" and therefore was not a valuable consideration for the bonds. One answer to this is that the court did not find that the payments were such subscriptions. The second point appears to be this: Since the purchasers of the bonds comprised the membership of the organization borrowing the money, they are indebted to themselves and hence cannot as creditors sue themselves as debtors. The only thing to commend this claim is its novelty. The defendant ignores the fact that not all of its members purchased bonds; that those who bought did so in varying amounts; that many of the bonds now in the hands of the plaintiff for collection passed from estates of deceased members to the present owners, who have no affiliation with the defendant; and, more important than all else, that the defendant by special act of the General Assembly became a body politic and corporate in 1877 and thus is a separate entity and the real debtor. 8 Spec. Laws 88.

A final contention is that the plaintiff should have been found guilty of laches and abandonment. The claim is that the plaintiff became aware in 1933 that the defendant had voted not to pay further interest, and that since the plaintiff neglected to take affirmative action between that date and the institution of the suit it should in equity be barred from proceeding with the foreclosure. On the other hand, the bonds on their face did not mature until 1949. Pursuant to the indenture, the bondholders waived in writing their right to claim a default for failure to pay interest on and after March 1, 1933. The indenture further provided that "no delay or omission by the Trustee in exercising

the rights or powers herein granted shall be held to exhaust or impair such rights and powers or be construed as a waiver thereof." Furthermore, the acceleration clauses in the bonds and the indenture were effective only at the option of the bondholders and the plaintiff, respectively, and neither had exercised that option. A clause in a mortgage accelerating maturity of the entire indebtedness for nonpayment of interest is solely for the benefit of the mortgagee or his assignee, who has the option to enforce it or to waive it. 1 Wiltsie, Mortgage Foreclosure (5th Ed.) p. 124; *Gordon* v. *Donovan,* 111 Conn. 106, 109, 149 A. 397. The court was correct in concluding that the plaintiff had not been guilty of laches and abandonment.

Other claims advanced by the defendant are too general or lack sufficient merit for discussion. There is no error in the judgment, but since the date set by the court for the sale of the property has passed the judgment should be modified to meet conditions obtaining at the time of the remand. See *Tilden* v. *Century Realty Co.,* 112 Conn. 439, 442, 152 A. 707; *Swift & Upson Lumber Co.* v. *W. L. Hatch Co.,* 115 Conn. 494, 498, 162 A. 19.

There is no error; and the case is remanded with direction to modify the judgment in accordance with this opinion.

In this opinion the other judges concurred.