GARY SLATTERY ET AL. *v.* AUGUST P. MAYKUT ET AL

AUGUST P. MAYKUT *v.* GARY SLATTERY ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and RUBINOW, Js.

148

Argued May 4—decision released September 19, 1978

*Helen F. Krause,* with whom, on the brief, was *Raphael Korff,* for the appellants-appellees (defendants in the first case) and the appellant-appellee (plaintiff in the second case).

*J. Daniel Sagarin,* with whom, on the brief, was *Michael L. Shapiro,* for the appellees-appellants (plaintiffs in the first case) and the appellees-appellants (defendants in the second case).

Longo, J. This is an appeal and cross appeal from a judgment rendered in each of two cases after a combined trial. The plaintiffs in the first case, Gary and Eileen Slattery, instituted an action against the defendants, August P. and Helen F. Maykut, seeking damages for breach of a contract to convey residential real estate, specific performance, and dam-

ages for fraud. In the second case, the plaintiff, August P. Maykut, sought from the defendants, Gary and Eileen Slattery, damages for the use and occupancy of the real estate, an award for damage to the real estate, and punitive damages. The Slatterys were awarded $15,300 in damages, with interest, on the breach of contract count. August Maykut was awarded $7000 for the Slatterys' use and occupancy of the premises and $2000 for damage to the premises.

In both cases the parties, hereinafter referred to as the Slatterys and the Maykuts, have assigned numerous errors in the court's finding; we shall deal with the claims of the Slatterys first. The Slatterys assign as error the finding without evidence of certain facts crucial to the Maykuts' claim for damage to the real estate. The burden of printing evidence to show that no error was committed has clearly been sustained by the Maykuts; the appendix to their brief discloses that the challenged findings are reasonably supported by the evidence. *Morningside Assn.* v. *Morningside Development, Inc.,* 172 Conn. 60, 63, 372 A.2d 141.

The Slatterys next contend that the court erred in reaching conclusions as to the reasonable value of their use and occupancy of the real estate in question, in that those conclusions are contrary to law and unsupported by the findings. It is futile to assign error involving the weight of testimony or the credibility of witnesses. *Hartford-Connecticut Trust Co.* v. *Putnam Phalanx,* 138 Conn. 695, 699, 88 A.2d 393. We find that the trial court's conclusions were correct in law; see 5 Corbin, Contracts, § 1115; and consistent with the facts found. *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58.

The Slatterys finally assign error in the court's overruling of their claims of law. Two of those claims were neither briefed nor pursued at oral argument.[1] Thus, we treat them as abandoned. *Stoner* v. *Stoner,* 163 Conn. 345, 348, 307 A.2d 146. The remaining claims of law warrant discussion at some length and will be addressed later.

The Maykuts assign as error the court's failure to find admitted or undisputed facts, certain of the court's findings as not supported by the evidence, the court's overruling of their claims of law, and certain of the court's conclusions.[2] In so doing, the Maykuts claim error by the court in connection with virtually every paragraph of their draft finding, a practice unfailingly discountenanced by this court. *Arcari* v. *Dellaripa,* 164 Conn. 532, 534, 325 A.2d 280. Some of the facts claimed are not admitted or undisputed. *Salvatore* v. *Milicki,* 163 Conn. 275, 277, 303 A.2d 734. In most instances, the facts sought to be added are already included in the finding, explicitly or implicitly, and in the remaining instances the facts claimed would not affect the conclusions of this court.[3] *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759.

---

[1] Error was assigned in the court's overruling of the Slatterys' claims that they were entitled to a $12,000 credit for rent paid under a lease option, and to $6500 in lost profits in the resale of the premises.

[2] The Maykuts have not pursued in their brief two assignments-of-error relating to the overruling of demurrers. We, therefore, consider those assignments to be abandoned.

[3] The Maykuts also assign error in the court's failure to admit evidence tending to show the inability of the Slatterys to purchase the property in dispute. In view of the trial court's conclusions, the evidence did not materially affect the outcome of the trial. Thus, such error, if any, was harmless. *Wambeck* v. *Lovetri,* 141 Conn. 558, 562, 107 A.2d 395.

The Maykuts' assignments of error relating to facts claimed to be found without evidence are without merit, except for the claim that there was no evidence to support the court's award of $2000 for damage to the premises by the Slatterys. At trial the Maykuts called a contractor to testify to the amount of property damage. He produced a list of the damaged items and an overall estimate of the cost of repairs, $4100. No allocation was made as to the cost of each item. The court found that the itemized list of needed repairs was accurate but that $4100 was in excess of the reasonable cost for making the repairs, and assessed damages at $2000.

As it does not appear there was any evidence to support the $2000 figure, we agree with the claim that the award cannot stand. Damages must be based on evidence. *Bertozzi* v. *McCarthy*, 164 Conn. 463, 468, 323 A.2d 553. It does not follow, however, that the court was required to accept the estimate of $4100 offered by the Maykuts' contractor merely because no other estimate was offered. The weight and credibility of the contractor's testimony was for the court to determine. *Willametz* v. *Goldfeld*, 171 Conn. 622, 628, 370 A.2d 1089. Since the record does not support a definite award for property damage, a new trial of that issue is necessary. See *Bianco* v. *Floatex, Inc.*, 145 Conn. 523, 525, 144 A.2d 310; *Sidor* v. *Kravec*, 135 Conn. 571, 575, 66 A.2d 812.

## I

As may appear from our discussion thus far, the facts underlying these appeals are complex: On or about September 30, 1971, August Maykut leased to the Slatterys for one year a twelve-room house in Greenwich. The lease, which was later recorded,

was drafted by Helen Maykut, an attorney-at-law. The terms of the lease contained an option allowing the Slatterys to purchase the premises for $165,000, after a payment of $15,300 to exercise the option, which sum would be applied against the purchase price as a down payment.[4] The Slatterys moved into the house in October of 1971 and paid the rent at the rate of $1000 per month through October 10, 1972. When the Slatterys moved into the house, it was in excellent condition, completely redecorated. The total rental paid was $12,000, which was to be applied as a credit on the price of the house if the Slatterys exercised their option and purchased the premises.

On October 10, 1972, the date the lease expired, the Slatterys paid to Helen Maykut $15,300 for the exercise of their option to purchase, which sum was and continues to be held in escrow by the Maykuts' attorneys. The lease and option agreement did not provide for payment or nonpayment of rent between October 10, 1972, and the time of closing. The Slatterys held over on the premises and had the beneficial use, enjoyment and possession of the property without paying rent from October 10, 1972, until some time in May, 1973. During that period they were served with two notices to quit.

---

[4] The option read as follows: "The lessees shall have the option to purchase said premises for the sum of $165,000.00, with the monthly rental up to 12 months, to be applied as a credit on the purchase price. The lessees will be required to pay the sum of $15,300.00 on October 10, 1972 to exercise this option. The option to purchase will run until April 10, 1973, provided that the sum of $15,300.00 is paid to the lessor on October 10, 1972 to exercise said option. The lessees shall have no right to sublet the premises. The lessees are obligated to pay the rent within 9 days after becoming due or said lease shall become null and void. The $15,300.00 payable October 10, 1972 will be applied against the purchase price as a down payment. The $2,000.00 payable September 30, 1971 is to be applied as the first and last month's rent on this lease."

On April 10, 1973, the date stated in the option for the purchase of the premises, the Slatterys tendered at the closing a certified check in the amount of $140,000. The closing did not take place, however, because of a claim upon the land of Karen Ivey, the former owner of the property. She had been represented by Helen Maykut in a divorce proceeding, and, as a result of a trust arrangement between Karen Ivey, Helen Maykut and August Maykut, Karen Ivey conveyed the premises to August Maykut, Trustee, by a deed which was executed and recorded in the Greenwich land records on June 20, 1969. The Maykuts informed Gary Slattery of the trust agreement disclosing Karen Ivey's equity in the land at the time of the execution of the lease option. Sometime later, the property was conveyed by August Maykut, as trustee, to himself individually. Thereafter Karen Ivey brought suit against the Maykuts, alleging fraud in the conveyance, and placed a real estate attachment on the house and property.[5] The Slatterys had actual knowledge of this claim, and were advised by counsel that the claim represented a cloud on the title and that a release or quitclaim deed from Karen Ivey would be a necessary precondition to closing the deal. Because August Maykut was unable to obtain the quitclaim deed from Karen Ivey, the closing did not take place.

The closing was rescheduled for April 17, 1973, by agreement of the parties, extending the time for performance of the lease option. On that date, the Slatterys were ready, willing and able to close, but

---

[5] Although the attachment was released prior to the time of closing, the release did not indicate that the case had been settled, but rather indicated that the case was still pending. In fact, Karen Ivey's suit against the Maykuts was not terminated until July 23, 1974, some fifteen months after the aborted closings.

again August Maykut offered no deed from Karen Ivey. Thus the closing fell through a second and final time. Thereafter, August Maykut visited the premises. He found that the Slatterys appeared to have vacated the premises and that the house was substantially damaged and badly in need of repair.

The Slatterys instituted their action against the Maykuts on May 10, 1973, and the Maykuts brought their suit shortly thereafter. The Maykuts demurred to the Slatterys' complaint on the ground that the lease and option agreement forming the basis of the damages and specific performance counts was unenforceable under the Statute of Frauds. The Superior Court *(Irving Levine, J.)* overruled this demurrer on November 6, 1973, essentially finding that the lease and option satisfied the Statute of Frauds.

Notwithstanding the overruling of their demurrer in the Superior Court the Maykuts filed suit in the United States District Court for the District of Connecticut, seeking to have the same lease and option declared invalid. Service was made on the Slatterys. They never appeared or answered and the Maykuts obtained a default judgment against them, decreeing that the lease option was void, on February 5, 1974.[6] Thereupon the Maykuts moved for summary judgment in the Superior Court on the ground that the federal court decision was res judicata, conclusively establishing the invalidity of the lease option, and that the Slatterys were thereby

[6] It does not appear that the Maykuts ever made the federal court aware of Judge Levine's decision that the lease option was valid, or of the pending proceedings in the Superior Court.

The Slatterys appealed the default judgment rendered against them to the United States Court of Appeals for the Second Circuit, but subsequently withdrew their appeal.

estopped from maintaining an action premised upon the invalid option. The Superior Court *(Tedesco, J.)* agreed, in part, and held that partial summary judgment should be granted for the Maykuts with the exception of the issue of the return of the Slatterys' $15,300, which the court held was a triable issue of fact.

The case then went to a combined trial[7] in the Superior Court, where the court *(Stapleton, J.)* decreed that the Slatterys were entitled to the return of the $15,300 paid as a deposit for the purchase of the real estate, with interest, and that the Maykuts were entitled to $7000 for the Slatterys' use and occupancy of the premises and $2000 for damage to the real estate. As we have stated, the award of $7000 for use and occupancy must stand and the issue of the amount of property damage must be retried. So far as those parts of the judgment are concerned, the only issue left is whether the court erred in declining to award the Maykuts interest. Although interest ordinarily begins to run from the time when the money is due and payable; *Belisle* v. *Berkshire Ice Co.,* 98 Conn. 689, 696, 120 A. 599; the equitable determination of whether interest is to be recognized as a proper element of damages turns in each case on whether the detention of money is wrongful under the circumstances. *Marcus* v. *Marcus,* 175 Conn. 138, 146, 394 A.2d 727. Whether in certain circumstances a sum has been liquidated may be a useful, although not necessarily a controlling, criterion. *Capitol City Lumber Co.* v. *Sudarsky,* 95 Conn. 336, 340-41, 111 A. 349. In view of the unliquidated nature of the sums found

---

[7] Upon the trial, the third count of the Slatterys' complaint, alleging fraud, was dismissed by the court under Practice Book, 1963, § 191A, by agreement of the parties.

due for use and occupancy and for damage to the premises, and the Maykuts' contributions to the breakdown of the transaction, we conclude that the trial court acted within the scope of its discretion in denying interest. *Bertozzi* v. *McCarthy,* 164 Conn. 463, 467, 323 A.2d 553.

## II

We now turn to the principal issue in the case, which is the Slatterys' claim for recovery of their $15,300 deposit and the preclusive effect, if any, of the federal court's default judgment on the Slatterys' claim.

The Maykuts claim that the federal court judgment removed from the Superior Court suit the Slatterys' claim for the return of the deposit, essentially arguing that this claim must fall if the lease and option were void and unenforceable. Furthermore, they contend that since the third count of the Slatterys' complaint, sounding in fraud, was dismissed at trial, there was no basis for the trial court to conclude that the Slatterys were entitled to the return of their deposit. The Slatterys respond that Judge Levine's ruling on the Maykuts' demurrer sustaining the validity of the option was the "law of the case," notwithstanding the subsequent federal court judgment, and that, in any event, the federal court judgment by default had no preclusive res judicata or collateral estoppel effect on their action.

The term res judicata is often used to denote two things in respect to the effect of a valid, final judgment: (1) that such a judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim or demand; and (2) that such a judgment constitutes an estoppel, between

the same parties or those in privity with them, as to matters that were necessarily litigated and determined in the first action although the claim or demand in the second action is different. *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155, cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699; *Brockett* v. *Jensen,* 154 Conn. 328, 337, 225 A.2d 190. The first proposition embraces what is commonly referred to as res judicata; the second is traditionally termed collateral estoppel.

We have held that the preclusive effects of res judicata and collateral estoppel depend upon the existence of a valid, final judgment on the merits by a court of competent jurisdiction. *Corey* v. *Avco-Lycoming Division,* supra, 317; *Ruocco* v. *Logiocco,* 104 Conn. 585, 595, 134 A. 73. We appear, however, never to have addressed the precise issue of whether a judgment upon default in a prior action is one "on the merits" and thus a final judgment entitled to be given res judicata effect in a subsequent action. Compare *Munch* v. *Willametz,* 156 Conn. 6, 10, 238 A.2d 424; *Automotive Twins, Inc.* v. *Klein,* 138 Conn. 28, 33, 82 A.2d 146.

We agree with the settled law in the federal system and in almost every state: a judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata in the absence of fraud or collusion even if obtained by default, and is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as when rendered after answer and complete trial. *Morris* v. *Jones,* 329 U.S. 545, 550–51, 67 S. Ct. 451, 91 L. Ed. 488; 1B Moore's Federal Practice ¶ 0.409 [4], p. 1025; annot., 77 A.L.R.2d 1410, 1419; 47 Am. Jur. 2d, Judgments

§ 1200. The same rule applies where, as here, the prior action is an action to quiet title to land; *Girard Trust Co.* v. *McGeorge,* 128 N.J. Eq. 91, 101, 15 A.2d 206; 47 Am. Jur. 2d, Judgments § 1212; annot., 128 A.L.R. 472, 507; and where the prior action was in the form of a declaratory judgment. See, generally, Restatement, Judgments § 77; annot., 10 A.L.R.2d 782, 785–87.

Having concluded that a default judgment is entitled in some circumstances to preclusive effect on a subsequent action, we now address the issue of whether the federal court action and the present cases involved the "same cause of action" so as to preclude the Slatterys' claim for the return of their deposit. The term "cause of action" is not easily defined, and the authorities have laid down no thoroughly satisfactory and all-embracing definition. Moreover, there exists a number of theories for determining when two causes of action are "the same" for the purposes of res judicata. The majority of courts have relied on the Restatement of Judgments, §§ 61–67, for the definition of identical causes of action for res judicata purposes. See *Lawlor* v. *National Screen Service Corporation,* 349 U.S. 322, 328, 75 S. Ct. 865, 99 L. Ed. 1122; *Kaufman* v. *Somers Board of Education,* 368 F. Sup. 28, 32 (D. Conn.). The "operative facts" of a claim determine whether such a claim is identical to a previously litigated cause of action; if the evidence needed to sustain the second action would have sustained the first action, then the first judgment is res judicata on the second claim. Restatement, Judgments § 61; 1B Moore's Federal Practice ¶ 0.410 [1], p. 1158; cf. *Jensen* v. *Nationwide Mutual Ins. Co.,* 158 Conn. 251, 258–59, 259 A.2d 598; *Hatch* v. *Hatch,* 157 Conn. 85, 90–91, 249 A.2d 241.

Applying these principles, we conclude that the federal court action to quiet title and the present action by the Slatterys for the return of their deposit are separate and distinct causes of action. The federal action was brought pursuant to 28 U.S.C. § 1655, which allows a federal district court *only* to remove a cloud from the title to land lying within the district, provided the necessary diversity of citizenship is present. *Schetter* v. *Heim,* 300 F. Sup. 1070, 1072–73 (E.D. Wis.). The "cause of action" in federal court was solely one to quiet title. The issue of the Slatterys' right to the return of their deposit was not involved in the question of title to the land actually litigated, and was not within the scope of the complaint or judgment in the federal the federal court's default judgment on the Slat- action. The Slatterys' present ground of recovery is distinct and severable from the claim made and litigated in the federal action. The only evidence necessary to support the "operative facts" of the federal action was proof of the Maykuts' title to the Greenwich property. Therefore, the rules of collateral estoppel, not res judicata, apply to the present case. The only issue, if any,[8] collaterally estopped by the federal court judgment was the

[8] There is considerable divergence of opinion on the issue of whether a former judgment by *default* can have any collateral estoppel effect on a subsequent action, some courts holding that a default judgment actually results in no litigated issues, others holding that default judgments have preclusive effect. Compare Restatement, Judgments § 68 (2), with annot., 77 A.L.R.2d 1410, 1424 (cases therein cited).

We need not address the Slatterys' claim that the controlling "law of the case" was Judge Levine's ruling on the Maykuts' demurrer, not the inconsistent judgment of the federal court declaring the real estate option void. Although it has been said that of two conflicting judgments on the rights of the parties, the later in time will prevail; Restatement, Judgments § 42; 49 C.J.S., Judgments § 445; we have decided that the federal court judgment did not affect the Slatterys' right to the return of their deposit.

issue of the validity of the option. The Slatterys were entitled to maintain an independent suit for the recovery of their deposit after the determination of title to the land in the former judgment. *Schleicher* v. *Schleicher,* 120 Conn. 528, 531, 182 A. 162. Thus the trial court did not commit error in entertaining the Slatterys' claim.

### III

We now address the merits of the Slatterys' claim that they were entitled to the return of the $15,300 paid as a deposit for the purchase of the property. The Maykuts appear to contend that, since the Slatterys defaulted on their obligation to purchase and failed to show that their pecuniary loss was greater than that of the Maykuts, the Slatterys could not recover the monies paid. While it is true that, where the purchaser in a real estate contract defaults in performance, he should not be given restitution of money paid unless it affirmatively appears that the money paid was in excess of the injury caused to the vendor by the default; 5A Corbin, Contracts, § 1132; this rule is triggered only where the purchaser is in default. The Maykuts claim that the Slatterys defaulted on both the April 10 and April 17, 1973, closing dates, when they would not accept the deed tendered by the Maykuts. We disagree.

A purchaser is not compelled to accept an unmarketable title, or even to take a conveyance where there is a reasonable probability that he will be subjected to a lawsuit. 6 Powell, Real Property ¶ 928, p. 340; *Frank Towers Corporation* v. *Laviana,* 140 Conn. 45, 52–53, 97 A.2d 567; *Lunde* v. *Minch,* 105 Conn. 657, 662, 136 A. 552. Here, Karen Ivey had instituted an action against the Maykuts, claiming an equitable interest in the land which the Maykuts

sought to convey. Since the Slatterys knew of that claim, they would not be bona fide purchasers of the property. The pendency of a good faith action by a third party against a vendor to establish an adverse equitable or legal title to the land renders the vendor's title unmarketable, and justifies the purchaser's refusal to proceed. *Wollenberg* v. *Rose,* 45 Ore. 615, 620, 78 P. 751; 77 Am. Jur. 2d, Vendor and Purchaser § 169. The purchaser is not required to go to court and look up the evidence upon which the third-party action is based, and make a determination whether it is maintainable; to require this would impose an unjust burden. *Simon* v. *Vanderveer,* 155 N.Y. 377, 382–83, 49 N.E. 1043. We conclude that the title which the Maykuts sought to convey was unmarketable by virtue of the pendency at the time of the two attempted closings of Karen Ivey's lawsuit against the Maykuts, and that the Slatterys were thereby excused from performance. They had a right to restitution for money paid to a defaulting vendor. *Janulewycz* v. *Quagliano,* 88 Conn. 60, 64, 89 A. 897; 5 Corbin, Contracts, § 1108. The trial court did not err, therefore, in ordering the return with interest of the $15,300.

In the first case there is no error; in the second case there is error in part, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover such damages for injury to the real estate as he may prove on a new trial limited to the issue of damages.

In this opinion the other judges concurred.