REBECCA SUSAN JOHNSON *v.* RAYMOND A. BESSETTE

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1132

Argued September 16—decided December 4, 1981

*Paul W. Smith,* for the appellant (defendant).

*Carl R. Ajello,* attorney general, and *Paul J. Bakulski,* assistant attorney general, for the appellee (plaintiff).

SHEA, J. The defendant has appealed from the denial of his motion to terminate and vacate an order for the support of a child whose paternity he had acknowledged in writing on May 1, 1975, his fatherhood having been previously affirmed by the

mother in accordance with General Statutes § 46b-172.[1] The acknowledgment of paternity was filed in court on June 11, 1975, giving it the "same force and effect as a judgment of that court" under the terms of that statute. On August 25, 1978,[2] the defendant was given written notice by the state

[1] General Statutes § 46b-172 (§ 52-442a at the time of commencement of this action) provides as follows:

"Sec. 46b-172. (Formerly Sec. 52-442a). ACKNOWLEDGMENT OF PATERNITY AND AGREEMENT TO SUPPORT; JUDGMENT. (a) In lieu of or in conclusion of proceedings under section 46b-160, the written acknowledgment of paternity executed by the putative father of the child when accompanied by a written affirmation of paternity executed and sworn to by the mother of the child and filed with the superior court for the geographical area in which the mother of the child or the putative father resides shall have the same force and effect as a judgment of that court, and an agreement to support the child by payment of a weekly sum until the child attains the age of eighteen years, together with provisions for reimbursement for lying-in expense, accrued maintenance and reasonable expense of prosecution of the petition, when filed with, and approved by a judge of, said court, at any time, shall have the same force and effect, retroactively or prospectively in accordance with the terms of said agreement, as an order of support entered by that court, and shall be enforceable and subject to modification in the same manner as is provided by law for orders of the court in such cases. Payments under such agreement shall be made through the family relations office of the superior court. Such written affirmations, acknowledgments and agreements to support shall be sworn to, and shall be binding on the person executing the same whether he is an adult or a minor. Such mother shall not be excused from making such affirmation on the ground that it may tend to disgrace or incriminate her; nor shall she thereafter be prosecuted for any criminal act involved in the conception of the child as to whose paternity she makes affirmation.

(b) At any time after the filing with the court of any acknowledgment of paternity, upon the application of any interested party, the court or any judge thereof shall cause a summons, signed by him or by the clerk or assistant clerk of said court, to be issued, requiring the putative father to appear in court at a time and place named therein, to show cause, if any he has, why the court should not enter judgment for support of the child by payment of a weekly sum until the child attains the age of eighteen years, together with provision for reimbursement for lying-in expense, accrued maintenance and reasonable expense of the action under this subsection on the acknowledgment of paternity previously filed with said court. The prior judgment as to paternity shall be res judicata as to that issue and shall not be reconsidered by the court. All such payments shall be made through the family relations office of the superior court."

[2] The facts recited in this opinion are taken from the briefs of the parties as supplemented by the pleadings in the record, and are not disputed.

department of social services of the amount of his support obligation for the child in accordance with General Statutes § 17-82e.[3]  He made child support payments to the state in the total sum of $607.59 during 1978.  It does not appear from the record before us that any court has yet issued an order of support against the defendant.  The defendant, nevertheless, following the rendition by the federal District Court of its decision in *Stone* v. *Maher*, Docket 6-18-81 No. 77-269 (D. Conn., March 24, 1980), filed a motion "to terminate and vacate all parental obligations, support orders, arrearages and agreements."[4]

---

[3] General Statutes § 17-82e provides as follows:  "Sec. 17-82e.  INVESTIGATION OF SPOUSE, PARENTS AND CHILDREN.  The commissioner shall investigate the financial condition of each applicant's and recipient's husband or wife, and in the case of an applicant or recipient who is less than eighteen years of age, his father and mother, and in the case of an applicant who is less than sixty-five years of age, his child or children, and shall make a determination as to the financial ability of each relative referred to herein to contribute to the applicant's or recipient's support in accordance with a reasonable contribution scale established by said commissioner, and shall notify in writing each such relative of the amount each is found able to contribute toward such support, and each such relative shall be liable in said amount from the date of such notice, retroactive to the date of granting of assistance, unless and until such support responsibility shall be otherwise fixed by a court of competent jurisdiction.  When any finding or written agreement to support, or any modification thereof is made with the commissioner by the liable relative and is filed with the clerk of the superior court serving the geographical area in which the applicant, recipient, beneficiary or liable relative resides, such agreement shall have the same force and effect as an order of support by said court, and shall be enforceable in the same manner as orders of support issued by said court, provided, any court of competent jurisdiction called upon to enforce such agreement, including a finding consented to by the relative, after notice to all parties, shall fully review such determination as to financial ability and shall insure that such determination is reasonable in light of the relative's ability to pay and may modify such finding prospectively, retroactively or both.  Such determination shall not be affected by appeal but shall continue in effect, until the appeal is denied, or unless changed by order of the court.  The commissioner shall periodically reinvestigate the financial condition of such relatives and shall give written notice of any change in the determination of ability to contribute."

[4] The defendant's motion states that the notice which he received pursuant to General Statutes § 17-82e claimed reimbursement of support retroactive to the date of granting assistance, but the motion disavows the existence of any support agreements.

In *Stone* it was held (1) that the provisions of General Statutes § 46b-172 are unconstitutional which prevent a putative father who has signed an acknowledgment of paternity from litigating that issue in a proceeding to determine his child support obligations, and (2) that the invalidity of those provisions would not automatically affect the paternity status or support obligations of persons who had previously acknowledged paternity but would permit them to contest the issue of paternity for the first time in a judicial proceeding "by seeking a modification in state court of prior support orders or agreements." The trial court denied the defendant's motion upon the ground that the *Stone* decision, which was filed on March 24, 1980, should not be given retroactive effect and, therefore, it was inapplicable to the defendant who had signed the acknowledgment in question almost five years earlier.

The state concedes that the defendant was a member of the plaintiff class in *Stone*, the named plaintiff in that action having been authorized to represent all those who had signed "written statements to the effect that they are fathers of illegitimate children" where such persons or the mothers of the children reside in Connecticut.[5] In that litigation the state was represented by the commissioners of social services and administrative services as parties-defendant.

To hold that the defendant may be denied relief upon the ground of nonretroactivity would deprive him of the benefits of the federal court decision to which he, as a member of the defined class, is as fully entitled as the named plaintiff in that case. A federal court judgment can be given no less force than that of a court of this state. *Barber* v. *International Co.*, 74 Conn. 652, 656, 51 A. 857 (1902). The result reached

---

[5] See *Stone* v. *Maher*, Docket No. 77-269 (D. Conn., March 24, 1980), n.6.

by the trial court is precluded by principles of res judicata and collateral estoppel, aside from the deference usually accorded to federal court decisions as precedent in federal constitutional matters. *State v. Surowiecki*, 184 Conn. 95, 99 n.1, 439 A.2d 918 (1981) (*Shea, J.* dissenting); *Slattery v. Maykut*, 176 Conn. 147, 157, 405 A.2d 76 (1978).

In *Stone* the federal court referred to General Statutes § 46b-174, which permits a court to modify or vacate prior paternity orders and support agreements, and stated that the petitioner in such action "should be permitted to assert his nonpaternity as a basis for modifying or vacating a prior support order or agreement," unless the paternity issue had previously been litigated and judicially determined. This court has indicated that an opportunity to contest the paternity issue is also available under General Statutes § 17-324, which provides for modification or setting aside of support orders, and, in light of the invalidity of contrary statutory provisions as held in *Stone*, nonpaternity may be properly raised as a defense in a proceeding for an order of payments. See General Statutes §§ 17-82e, 17-324, 46b-172. The state, nevertheless, maintains that the proper procedure to be followed for persons in the situation of the defendant is to bring a petition for a new trial in accordance with General Statutes § 52-270. In *State v. Lombardo*, Appellate Session of the Superior Court, Docket No. 673 (1980), we concluded that a petition for new trial was an appropriate remedy under the circumstances of that case, where the motion of the putative father seeking to contest paternity, which was treated as a petition for a new trial, had been filed within the three-year period allowed by the applicable statute of limitations, General Statutes § 52-582. The defendant's acknowledgment of paternity was filed in 1975, almost five years before *Stone*, and at the time of that decision a petition for new trial was not available to him or to other members of his

class in that action, including the named plaintiff therein. We do not believe that the defendant can thus be deprived of the opportunity to contest the paternity issue which he won in the federal court.[6]

The question remains whether the procedure employed by the defendant to implement his victory was proper. As we have noted, the record does not disclose that any enforcement proceeding to obtain a judicial order of payments has ever been instituted against the defendant, the only court record of the matter being the filing of the acknowledgment of paternity in the clerk's office previous to the defendant's motion. Unlike the named petitioner in *Stone* v. *Maher*, the defendant has not proved the existence of any court order applicable to him. His motion to "terminate and vacate all parental obligations, support orders, arrearages and agreements," was wholly inappropriate, since the power of the court to modify or vacate must necessarily be limited to judicial actions previously taken. It was also incumbent upon the defendant to seek modification and joinder of the mother and the child who had an interest in the matter. *State* v. *Bashura*, 37 Conn. Sup. 745, 436 A.2d 785 (1981); *State* v. *Lombardo*, supra; *Stone* v. *Maher*, supra, n.9. The defendant's motion cannot be treated as an action seeking equitable or other relief with respect to the signed acknowledgment of paternity which had been filed, because no process was ever served as required. General Statutes § 52-50. We conclude, therefore, that the motion was properly denied because of the failure of the defendant to follow some orthodox procedure in asserting his non-paternity status. Although we do not agree with the basis for the denial of his motion by the trial court, we

[6] We have no occasion to consider the ramifications of Public Acts 1981, No. 81-274, effective October 1, 1981, which purports to restrict persons seeking review of an acknowledgment of paternity to the use of a petition for a new trial.

affirm the judgment upon the procedural grounds stated. *Carlson* v. *Kozlowski*, 172 Conn. 263, 265, 374 A.2d 207 (1977).

There is no error.

In this opinion DALY and BIELUCH, Js., concurred.