[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON OLENICKSMOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM
The defendant Olenicks have filed a motion for summary judgment on their counterclaim. The plaintiff was owner of certain property in Windham and in December of 1989 the defendants entered into an agreement to purchase the premises. The Olenicks paid a $5,000. deposit pursuant to the terms of the agreement. The contract was made upon the implicit condition that the seller would convey good and marketable title to the Olenicks. The Olenicks in their counterclaim assert that after examining the land records and the relevant law they informed counsel for the plaintiff that the Olenicks concluded the plaintiff could not convey good and marketable title given the status of the land records. The plaintiff was unable to or unwilling to correct the defects in title. The contract provided for a closing date of January 27, 1990 upon default of which the plaintiff's deposit money would be returned. The money has not been returned despite demand.
The plaintiff acquired several lots in a subdivision of which CT Page 10053 the subject premises was one in May of 1989. A party named the Levesques purchased another lot in the subdivision in 1988 from the prior owner of the subdivision. This prior owner in December 1988 recorded a declaration of restrictions and covenants on the land which covered all the lots. The Levesques in an affidavit submitted in a motion for summary judgment they filed, arising out of a out of later suit brought by the plaintiff, claimed that when they purchased the property it was represented that the declaration would be filed and that their lot wasn't to be included.
The declaration put a square foot limitation on the lots in the subdivision. After the plaintiff purchased the lots in the subdivision they approached the Levesques for their assent in reducing the square footage requirements. The Levesques claimed this was the first time they became aware of the fact that their lot was included in the declaration. In October 1989 the plaintiff filed a corrected declaration of restrictions on the land records reducing the square footage requirements on all the lots including the Levesque lot. In January 1990 the Levesques filed an affidavit and notice on the land records in which they stated that the plaintiff's amended declaration put on the land records the previous October was filed without their knowledge and consent. In a letter to the president of the plaintiff which the Olenicks attached to their motion for summary judgment, counsel for the Levesques indicated his clients were prepared to file the appropriate civil action to enforce what they received a their rights under the original declaration.
As a result of the problems and disputes that developed over the above matters plaintiffs brought suit against the Levesques, the Olenicks and several attorneys. This court granted motions for summary judgment filed by the defendants. The court later denied the motion for summary judgment filed by the Levesques on their counterclaim.
The memorandum of decision of this court on the defendants' motions for summary judgment against the plaintiff's claims was filed August 16, 1994 (Opel Inc. v. Aephonse Levesque et al., CV 90-0700872S, Hartford Superior Court). In that decision the court made certain conclusions of fact and law which in the court's opinion at least dictate a result in favor of the Olenicks.
In response to the present Olenick motion Ms. Kaplan, president of Opel, Inc. submitted two affidavits and much argument centered around the questions as to whether the plaintiff was CT Page 10054 prepared to present marketable title on the date of the Olenick closing. The plaintiff argues that title insurance was available on the Olenick lot and that in fact title insurance was procured for subsequent purchasers of the subject lot in July of 1990. Therefore the plaintiff argues the title presented to the Olenicks was marketable.
An April 5, 1995 affidavit from the attorney for the Olenicks indicate title insurance was indeed procured for a subsequent purchaser of the subject lot but the title insurance company indicated title would be insured subject to an exception for issues involving the restrictions and covenants and their attempted correction. The plaintiff in a counter affidavit states this language and the affidavit from Olenicks counsel did not thereby indicate the title was unmarketable.
Although title and the concept of marketability often involves the resolution of complex issues by examination of ancient law and cases and arcane concepts known only to technicians I trust that common sense still has a foothold worth preserving in this area of what is basically contract law.
People buy homes everyday. Often various easements and restrictions run on the land that they wish to purchase. Not uncommonly at the time the contract to purchase is entered into either the easements and restrictions aren't known to the prospective purchaser or it is not apparent that anyone is prepared to enforce their interests. In this context the definition of marketability although interesting and important to the resolution of many of these cases where a prospective purchaser wants to back out of a contract to purchase land, is not the only fair and reasonable consideration.
People who have entered into contractural relations should in effect be allowed to rescind them when as a practical matter the enjoyment of the benefits they hoped to secure by the contract are substantially impaired through no fault of their own. In my previous decision I already concluded the Olenicks were not part of any grand conspiracy to harm the plaintiff. So in this situation no one should be forced to carry through on a contract to buy land if there is a reasonable prospect that they are buying a lawsuit which makes a prima facie claim regarding the enforcement of easements or restrictions on the land that is the subject of the contract. As I indicated in my previous memorandum under all the circumstances referred to in that decision the Olenicks had a CT Page 10055 justifiable concern on the title as offered — title in the broad sense meaning their right to use and enjoy the land in a reasonable manner. The Olenicks should not be expected to buy a possible lawsuit along with the land and even apart from technical questions about what a "cloud on title" might mean in other contexts. Such a lawsuit here could be initiated by the Levesques or their successors in interest and should provide the Olenicks with a reason to not perform on the contract to purchase, Slattery v.Maykut, 176 Conn. 147, 161 (1978), see also Lunde et al. v. Minch,et al, 105 Conn. 657, 662 (1927) which is even more factually on point than Slattery.
The Olenicks are entitled to summary judgment on their counterclaim. Their $5,000 deposit should be refunded to them with interest from February 7, 1990 when the Olenicks notified the plaintiff of their intention to rescind the contract to purchase the real estate. Whatever the merits of the dispute between the Levesques and the plaintiff I fail to see why the Olenick family should be a victim of that dispute.
Thomas Corradino, Judge