[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
As stated in an earlier memorandum of decision dated October 21, 1994, which concerned a motion to strike, this dispute arises out of a business arrangement between the plaintiff, Mayer-Wittmann Joint Ventures, Inc. (Mayer-Wittmann), and the defendant, Gunther International, Ltd. (Gunther). Gunther hired the plaintiff to assist it in both managing and recapitalizing the defendant corporation, including related management services. According to the plaintiff, the parties reached an agreement, which was reduced to writing, regarding calculations of the compensation due to the plaintiff. The present action was brought by the plaintiff because the defendant Gunther allegedly failed to honor the terms of that agreement. CT Page 5997
On September 14, 1995, the plaintiff filed an amended complaint containing five counts against Gunther. Counts one and two sound in breach of contract. Count three alleges unjust enrichment. Count four involves a claim by the plaintiff for a percentage of funds invested in the defendant corporation, and the fifth count relates to a memorandum of understanding between the plaintiff and the defendant, dated December 7, 1990, in which the defendant allegedly agreed to pay the plaintiff a monthly fee for management services.
The defendant denied the material allegations of the complaint and filed special defenses that the agreement with the plaintiff was not valid, that the plaintiff had waived any claims for a percentage of investment funds, that unjust enrichment was not permitted, and that the plaintiff's principal officer, Karl Mayer-Wittmann, was involved in a conflict of interest.
This case was referred to Attorney William A. Phillips, an attorney trial referee, in accordance with General Statutes § 52- 434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the following pertinent findings of fact: (1) that the defendant corporation, which was controlled and operated by William Gunther, Jr., assembled and marketed certain kinds of office equipment, but became involved in a "severe cash crunch"; (2) that in December, 1990, the defendant retained Karl Mayer-Wittmann, a financial consultant who had incorporated his business as Mayer-Wittmann Joint Ventures, Inc., to attempt to find sources of capital for the defendant, and also to provide certain managerial services as required; (3) that the parties agreed that the plaintiff would be compensated for its managerial services at the rate of $5,000 a month and that the agreement could be canceled on thirty days' notice; (4) that the parties did not agree that the plaintiff would be entitled to a "success fee" if the plaintiff brought new capital to the defendant; (5) that the agreement to pay the plaintiff $5,000 a month was set forth in a memorandum of understanding between the parties, which was dated December 5, 1990; (6) that in December, 1991, the plaintiff attempted to amend the memorandum of understanding by adding a provision providing it with a "success fee" if the plaintiff succeeded in obtaining investment capital for the defendant; (7) that although Gunther signed this amended agreement at some point between December 20 and December 23, 1991, he no longer retained his position as president of the defendant at that time, since the defendant's board of directors CT Page 5998 had terminated his position as such officer; (8) that the defendant's own records indicated an obligation to the plaintiff in the amount of $76,000 as of March 31, 1992 and $107,000 as of August 31, 1992; (9) that when the defendant received an influx of capital, its board of directors changed, and plaintiff's services were canceled; (10) that as of December 7, 1992 the defendant owed the plaintiff $110,000, at the rate of $5,000 per month for twenty-two months.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiff and the defendant entered into a valid binding contract on December 7, 1990, pursuant to which the plaintiff would and did provide managerial services at an agreed rate of $5,000 per month; (2) the plaintiff was the procuring cause of the defendant's receipt of new capital totalling approximately $2,500,000 in February and October, 1992; (3) the plaintiff's attempt to add a fee for "success" in obtaining capital was not "fair dealing" with the defendant corporation, of which Karl Mayer-Wittmann had become a director; (4) the amendment to the December 7, 1990, agreement, purporting to provide for a "success" fee was signed by Gunther when he was no longer president of the defendant and therefore was not binding upon the defendant corporation; (5) the plaintiff's services were properly terminated on October 14, 1992; (6) the defendant owes the plaintiff $110,000 as plaintiff performed the managerial services agreed upon in the contract of December 7, 1990; (7) the defendant should have paid the plaintiff this amount at the rate of $5,000 per month starting on January 15, 1992, but failed to do so; (8) the defendant does not owe the plaintiff anything with respect to the purported amended agreement providing for a success fee if the plaintiff was able to obtain new capital for the defendant; (9) because of the existence of a binding contract, the plaintiff's other theories of recovery, unjust enrichment and promissory estoppel, were not allowable; and (10) the plaintiff is also entitled to prejudgment interest at 10% per year from October 14, 1992, when its services were terminated, to the date of this judgment.
The defendant moved to correct the referee's report pursuant to Practice Book § 438. The defendant sought corrections to reflect that: (1) the plaintiff was not the "procuring cause" of the new capital received by the defendant in the approximate amount of $2,500,000, because one Gerald Newman was the person who obtained approximately $1,800,000 of such new venture capital; and (2) the plaintiff was not entitled to prejudgment CT Page 5999 interest pursuant to General Statutes § 37-3a because the referee had not made any finding in his report that the retention of this money by the defendant was "wrongful."
In response to the motion to correct filed by the defendant, the attorney trial referee declined to make any substantive changes in his report or recommendation that judgment enter for the plaintiff in the amount indicated, including prejudgment interest. As to his recommendation for prejudgment interest in accordance with General Statutes § 37-3a, the referee noted that the file contained an offer of judgment filed by the defendant in the amount of $110,000, the amount recommended by the referee, but the defendant offered to pay this sum to the plaintiff at the rate of $5,000 a month, which the plaintiff rejected. The referee concluded that this offer of the judgment by the defendant did not comply with Practice Book § 342, as the offer was based on a monthly payment instead of payment in full. The referee further noted that the defendant was aware of its obligation to pay the plaintiff, but nevertheless retained the $110,000 owed to the plaintiff since October 14, 1992, and hence the nonpayment was "wrongful."
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated very recently in Elgar v. Elgar, 238 Conn. 839,848-49, ___ A.2d ___ (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See alsoRomano v. Derby, 42 Conn. App. 624, 626, ___ A.2d ___ (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.")
Again, according to Elgar v. Elgar, supra, 238 Conn. 845, CT Page 6000 this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence," and, in addition, whether "[t]he conclusions drawn therefrom were legally and logically correct." As stated in Romano v. Derby,
supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
As to the first task of determining whether there is support in the record for the factual findings of the referee, the file discloses that although the defendant filed exceptions to the referee's report pursuant to Practice Book § 439, which repeated the assertion in its motion to correct that the plaintiff was not entitled to prejudgment interest, it did not file with its exceptions a transcript for any of the five days of trial. It follows therefore that the factual findings by the referee must stand uncorrected because a failure to file proper exceptions constitutes in effect a waiver of the right to attack the subordinate factual findings contained in the report. ". . . [F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v. Carolton Chronic Convalescent Hospital, Inc., 7 Conn. App. 364, 366, 508 A.2d 829
(1986).
A failure to file valid exceptions constitutes in effect a "waiver" of "any right to attack the subordinate factual findings contained in the report." Bernard v. Gershman, 18 Conn. App. 652,655, 559 A.2d 1171 (1989). When a trial transcript is not furnished to the court, it can be assumed that such a transcript is not "crucial" to the evaluation of the referee's report.Beizer v. Goepfert, 28 Conn. App. 693, 706-07, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
The defendant did file objections to the acceptance of the referee's report in accordance with Practice Book § 440. The CT Page 6001 objections relate to the determination by the referee that the plaintiff is entitled to prejudgment interest because, according to the defendant, its refusal to pay the plaintiff for the managerial services it rendered was not "wrongful." In this regard, the defendant contends that although it was prepared to pay to the plaintiff the sum of $110,000, the plaintiff insisted on a "success fee" amounting to $310,000, to which it was not entitled.
General Statutes § 37-3a permits prejudgment interest if money has been retained "after it becomes payable." "Under §37-3a, an allowance of prejudgment interest turns on whether the detention of the money is or is not wrongful under the circumstances. . . and that the ultimate determination is one to be made in view of the demands of justice rather than through the application of any arbitrary rule." (Internal quotation marks and citations omitted.) Spearhead Construction Corporation v. Bianco,39 Conn. App. 122, 134-35, 665 A.2d 86 (1995). See MiddlesexMutual Assurance Co. v. Walsh, 218 Conn. 681, 702, 590 A.2d 957
(1991). The decision whether to order prejudgment interest is not to be based on whether the issues in this case were or were not contested in a good faith dispute between the parties, or whether the amount of the judgment was or was not a liquidated sum (seeAlderman v. RPM of New Haven, Inc., 20 Conn. App. 566, 570,568 A.2d 1068 (1990)), but rather the issue is solely whether the money was withheld wrongfully under the circumstances. Slatteryv. Maykut, 176 Conn. 147, 155, 405 A.2d 76 (1978).
In the present case, the referee found that the defendant knew that it owed the plaintiff money for its managerial services and had refused to pay what it owed. Whether prejudgment interest is due is "a factbound determination [that] lies within the trial court's discretion. . . . it [is] inappropriate for the trial court to invade the fact-finder's province and make the determination of whether an interest award was appropriate. The person best able to make this equitable determination is the attorney trial referee who heard the case and is most familiar with the facts." Spearhead Construction Corporation v. Bianco,
supra, 39 Conn. App. 135. "[T]he determination of whether interest pursuant to § 37-31 should be awarded is a question for the trier of fact." Foley v. Huntington, Co., 42 Conn. 712,738, ___ A.2d ___ (1996). The Foley court went on to say that the prejudgment interest statute applies to "underlying claims . . . for liquidated sums due for services . . ." Id. 739. "Prejudgment interest pursuant to § 37-3a has been applied to breach of CT Page 6002 contract claims for liquidated damages, namely, where a party claims that a specified sum under the terms of a contract, or a sum to be determined by the terms of the contract, owed to that party has been detained by another party." Id. 740. The underlying claim in this case is for liquidated damages based on a contract where the referee found as a fact that the money owed to the plaintiff was wrongfully detained after it becomes due and payable.
The referee's findings of fact must stand unchallenged because of the absence of valid and proper exceptions, and his conclusion that the plaintiff was entitled to prejudgment interest from October 14, 1992, follows legally and logically from those facts.
Therefore, as to the plaintiff's complaint, judgment is entered in accordance with the recommendation of the referee in favor of the defendant as to the first, second, third and fourth counts of the complaint. Judgment is entered in favor of the plaintiff on the fifth count of its complaint to recover $110,000, plus prejudgment interest, pursuant to General Statutes § 37-31, at the rate of 10% per year from October 14, 1992, to the date of this judgment, which amounts to $44,989, for a total recovery due the plaintiff in the amount of $154,989. Statutory costs shall be taxed by the clerk
So Ordered.
Dated at Stamford, Connecticut, this day 28th of August, 1996.
William B. Lewis, Judge