Frederic E. Hammer, J.
At the trial, the parties submitted to this court a stipulation in which they have agreed to the facts. The facts, so stipulated, can be summarized as follows:
Plaintiffs Jabez Williams and Frances Williams are husband and wife, residing at 222-14 39th Avenue, Bay side, Queens. In December, 1968 Jabez Williams entered into a “corrupt and usurious agreement ” with defendant Michael Macchio in which Jabez Williams borrowed $10,000 from Michael Macchio and agreed to repay the sum of $12,000 within three weeks, and said “ transaction was and is void and illegal ” in that the rate of interest exceeded the legal rate permitted by the statutes of the State of New York. “ Defendant Macchio was convicted of a violation of section 190.40 of the Penal Law, i.e., criminal usury” in connection with that loan. On November 20, 1970 in the Supreme Court, Queens County, he was sentenced to one year in prison. An appeal therefrom is now pending in the Appellate Division. Thereafter, 11 the defendant threatened the physical well being of plaintiff jabez williams, his wife, francés williams and his children upon the inability of jabez williams to return the $12,000.00 ” and “from the middle of May, 1969 to June 4th, 1969, defendant michael macchio threatened to maim and harm plaintiff franges williams and her family ”.
On June 4, 1969 Frances Williams conveyed to Michael Macchio the property located at 222-14 39th Avenue. At the closing Frances Williams was not represented by counsel. Plaintiff Frances Williams 1 ‘ was induced by threats and violence and for the fear placed upon her for her safety and that of her family and loved ones to convey said property to defendant michael macchio ” and “ said threats and violence amount to duress as a matter of law”. The premises were sold subject to a first mortgage in the sum of $22,370.50 plus interest and a second mortgage in the sum of $500. Frances Williams received the sum of $5,000 in cash from defendant Macchio at the time of the closing, together with a cancellation of the alleged indebtedness of $12,000. The total price of the house was $40,000, as evidenced by the mortgages of less than $22,870.50, the usurious note of $12,000 and the additional $5,000 received at the time of the conveyance. On June 4, 1969 said property was valued at $58,000. The concluding paragraph of the stipulation of facts states that plaintiff Frances Williams *96 is prepared to offer defendant Michael Macehio whatever consideration the court deems just and proper as a condition of the rescission and cancellation of the conveyance.
In opposition to the relief requested, the defendant has presented the following arguments: Defendant contends that if this court is to rescind the transaction as requested, plaintiff must return to him the $5,000 in cash which was paid at the time of the closing, together with the $10,000 which represents the principal amount of the usurious note made by the husband and subsequently canceled at the transfer of title allegedly for the benefit of the wife. Recognizing and admitting that this note was usurious at the outset, defendant nevertheless contends that the wife, who was not a party to the usurious transaction may not interpose the defense of usury and as a condition of rescission is bound to pay the said note. Defendant also contends that this action should be dismissed because the plaintiff has not tendered the $5,000 in cash or the $10,000 which represents the amount of her husband’s note.
Plaintiffs contend that because of the admitted duress which was involved, the wife is not bound to pay the note. Plaintiffs state that they are prepared to offer whatever the court deems just and proper for a rescission and return of the property.
The question thus presented is whether a party, who under duress agrees to the cancellation of a usurious note of her husband, must, as a condition of rescission, pay back the principal amount of the note heretofore canceled. The defendant has submitted significant authority which supports the proposition that a stranger to a usurious transaction may not assail it. It is long settled that “ The defense of usury is personal to the borrower ” (Broad & Wall Corp. v. O’Connor, 13 A D 2d 462) and is not available to strangers to the usurious loan transaction. As was stated in Moore v. Plaza Commercial Corp. (9 A D 2d 223, 226, affd. 8 N Y 2d 813): “ The law confines the privilege of attacking a usurious agreement without paying the amount of the loan with legal interest to the actual borrower. ’ ’ A nonparty to the loan transaction is bound to tender the principal of the debt together with legal interest as a condition for granting equitable relief (Halsey v. Winant, 258 N. Y. 512, 531). It has been held that a wife may not claim usury where only the husband was a party to the original usurious transaction. (Matter of Pritchard, 226 App. Div. 272; see, also, 32 N. Y. Jur., Interest and Usury, § 74.)
Thus, if plaintiff Frances Williams had voluntarily agreed to undertake to pay her husband’s usurious obligation, the above *97 cases could be applicable. This defendant seeks to Apply such rules to this transaction, which was not freely and voluntarily entered into. It was admittedly entered into under threats of violence and coercion constituting duress as a matter of law.
To achieve such result would be a fallacious conception of the rule of equity courts. It would reward a practitioner of duress and be a scourge upon the victim of such conduct. Defendant’s contention stripped of the niceties of legal sophistry, false and specious reasoning, and the embellishment of weighty unnecessary citations can be reduced to simple propositions. One: previous the threats of violence, coercion and duress applied to plaintiff Frances Williams, she possessed a house, her husband had executed an unenforceable note; two: subsequent the application of the admitted threats and coercion, defendant contends that plaintiff is now required to pay the usurious note conditioned upon the return of her house. Such arguments stir the conscience of this court of equity and should have no support in applicable law.
Elementary it is that a party forced to enter into an agreement under duress has the right to rescind such amoral agreement. (Rader v. Manufacturers Cas. Ins. Co. of Philadelphia, 127 N. Y. S. 2d 334, affd. 282 App. Div. 1041.) The accepted principle is that a party who seeks to rescind an agreement must first restore, or attempt to restore, that which he had thus received. The effect of a rescission is the restoration of the parties to their original position prior to the making of the peccant contract .(Kammerman v. Curtis, 285 N. Y. 221; E.T.C. Corp. v. Title Guar. & Trust Co., 271 N. Y. 124; 10 N. Y. Jur., Contracts, § 416). (Holden v. Rinaldo, 28 A D 2d 947, 949.)
The equitable basis of this doctrine is that one who seeks equity must do equity. In matters of contract rescission, the requirement of restoration" is not enforced with “unvarying strictness ”. (Ballantine v. Ferretti, 28 N. Y. S. 2d 668, 683.) Traditionally, the requirement has been enforced so as to permit an equitable adjustment of the dispute. It is never so applied to create a shield for wrongdoing. (Butler v. Prentiss, 158 N. Y. 49, 64.) Thus, in Masson v. Bovet (1 Denio 69, 74-75), the court indicated that where, through circumstances, a defrauded party could not restore all that he had received in a fraudulent transaction, the law would lend no sympathy to the defrauding party: ‘1 the law cares very little what his loss may be, and exacts nothing for his sake. If, therefore, he has so entangled himself in the meshes of his own knavish plot that the party *98 defrauded cannot unloose him, the fault is his own, and the law only .requires the injured party to restore what he has received, and, as far as he can, undo what had been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing require of him. If this fails to extricate the wrongdoer from the position that he has assumed in the execution of the contract, it is in no sense the fault of his intended victim, and upon the principles of eternal justice whatever consequences may follow they should rest on the head of the offender alone.”
Similarly, in Hammond v. Pennock (61 N. Y. 145, 152-153), the court stated: “ It is, undoubtedly, a general rule of law, that a party who would rescind a contract, upon the ground of fraud, must act promptly and restore, or offer to restore, to the other party what he received under it. But this rule only means that he must restore what he himself has received, and has, by force of the contract, under his own control. If the wrong-doer has, by his own act, complicated the case, so that full restoration cannot be made, he has but himself to blame.” (Italics added.)
Similarly, in Butler v. Prentiss (158 N. Y. 49, 64, supra), the court stated: ‘ ‘ When, without fault on the part of the one defrauded, seeking relief in equity on account of advantage taken of fiduciary relations, it is impossible to restore the one guilty of the fraud to his original condition, the general rule of restoration is not strictly applied, because it would become a loophole for the escape of fraud. Equity makes a reasonable application of the rule by requiring whatever fair dealing requires under all the circumstances of the particular case, but it does not permit the rule to become a shield for wrongdoing.” (See, also, Heckscher v. Edenborn, 203 N. Y. 210, 227-228.)
The application of these well-established rules to the instant case presents clearly that plaintiff Frances Williams should not as a condition of rescission pay the amount of the note. She has not engaged in any wrongdoing. She has suffered as the result of these occurrences. She received no benefit from the note cancellation since neither she nor her husband was bound to pay it. Rescission will restore her to her original position. Now that the note has been destroyed defendant finds himself entangled “ ‘ in the meshes of his own knavish plot ’ ”. (Hammond v. Pennock, supra, p. 153.) Under these circumstances, it would be in keeping with sound equitable principles to condition rescission only upon the payment of the $5,000, and for this court to refuse to exercise its equitable discretion *99 to aid the wrongdoing of the defendant. Accordingly, upon payment of the $5,000, defendant is directed to deliver the deed to plaintiff’s premises to plaintiff’s attorney, together with any other instruments necessary for the transfer of title. Finally, defendant’s contention, that the action should be dismissed because plaintiffs have not tendered the benefits received pursuant to the contract is without merit since, pursuant to CPLB. 3004, the court may, as here, make a tender of restoration a condition of the judgment.