JOSEPH DUKSA *v.* CITY OF MIDDLETOWN ET AL.
(9654)

PETERS, HEALEY, PARSKEY, SHEA and MENT, Js.

---

Argued November 4, 1983—decision released February 7, 1984

*Francis O'Neill,* city attorney, for the appellants (defendants).

*William C. Galligan,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. This is the second appeal in this case and certain material facts outlined in the earlier opinion need not be repeated here. See *Duksa* v. *Middletown,* 173 Conn. 124, 376 A.2d 1099 (1977) *(Duksa I).* In 1970, the plaintiff owned a farm of about 100.5 acres in a part of the defendant city of Middletown (city) zoned for industry. In that year he granted the city an easement and right of way for a sewer across his land in return for the right to tie into the sewer without cost. The permanent sewer easement occupies 2.1 acres with approximately 1200 feet running in a north-south direction. There was already a 75 foot wide ease-

ment for a natural gas pipeline which ran across the farm. The farm is not level, sloping from west to east down to a river. Because of this sloping character, the sewer was built in an embankment which cut a portion of the farm into two pieces. This embankment is seventeen to eighteen feet high at its easterly end, is very steep and cannot be climbed or driven over. Approximately 62.65 acres are located south and east of the sewer easement while approximately 35.75 acres are located north and west of that easement. Neither the sewer easement nor the gas line easement can be built upon. Under existing zoning regulations, structures may not occupy more than 30 percent of the land.[1]

In *Duksa I,* we observed that the plaintiff complained as soon as the city began to bring fill to construct the embankment. He brought suit, "alleging that the city and its agents failed to disclose that the construction of the sewer would entail building an embankment, that he was unable to read construction maps and relied on the defendants to explain to him the effect of granting the easement, and that he was induced to execute the grant in reliance on their representation." *Duksa I,* supra, 125. He sought to have the grant set aside as to the portion involving the embankment and he claimed damages and other relief. *Duksa I,* supra. In that action, the trial court found the issues for the plaintiff and awarded him money damages. We found error in part and ordered a new trial.

Although we determined that the parties were not equal in bargaining power, we said that "that alone is not sufficient to justify rescission of [this] contract." *Duksa I,* supra, 127. After discussing the negotiations between the plaintiff and the city, we decided that " '[t]he unintentional nondisclosure of facts [by the

---

[1] Drainage easements for the right of way would have to be taken into consideration by any potential builder on this land. Part of the farm is within a flood plain area and is below the elevation of the sewer line.

city's agent, the defendant Frank Opalacz] as to which there is a duty of disclosure' . . . justifies rescission." *Duksa I,* supra, 128. We further determined that "the city had a duty to disclose at least the fact that the sewer would be built in an embankment, and thus the plaintiff was entitled to rescission or to damages." (Citations omitted.) *Duksa I,* supra, 129. We also concluded that the trial court had used an incorrect measure of damages and, finding error in part, we affirmed the judgment except as to the amount of damages and ordered a new trial limited to damages.

In remanding on the issue of damages, we said that "[t]he plaintiff might elect to rescind his contract and receive the value of the entire easement under the theory that the easement had been effectively condemned and taken by the city, or he could elect to receive damages equal to the difference between the actual value of the right to tie in and the value as represented." (Citations omitted.) *Duksa I,* supra, 129. The trial court's memorandum of decision on the present appeal, in referring specifically[2] to this language, said: "Plaintiff did *not* pursue the latter but instead put on appraisal testimony the thrust of which was to establish the value of the subject property before and after the taking of the permanent easement for the installation of the sanitary sewer trunk line together with temporary construction work area rights to drain and construct pipes and end walls and to relocate existing farm roadways." (Emphasis added.) It pointed out that the plaintiff testified about damages sustained to his dairy farming interests on the property during the construction of the sewer easement for which he also sought damages.

---

[2] In referring to the plaintiff's second option on remand, the trial court spoke of "the difference between the actual right to tie in and the value as represented." Our opinion in the first *Duksa* appeal spoke to "the difference between the actual *value of the* right to tie in and the value as represented." (Emphasis added.) *Duksa* v. *Middletown,* 173 Conn. 124, 129, 376 A.2d 1099 (1977).

The trial court awarded the plaintiff damages in the amount of $85,298 plus costs. It accepted the appraisal figures of the plaintiff's appraiser as its basis for finding that the value of the plaintiff's land had been diminished by $59,200 after the installation of the sewer trunk line. The plaintiff was also awarded "compensable costs of $26,098 resulting from the damages to his dairy interests during the four month period" of the sewer construction.[3] In pursuing this course, the trial court explicitly rejected the city's claim that "the court deal with the issue of damages as it would in a straight condemnation proceeding, that is to establish the value of the land before and after the 'taking' disallowing any other claims for damages such as those attributable to the interruption of the plaintiff's farming operation." It went on to say that damages in a condemnation proceeding are assessed as of the date of the taking which "means the accomplishment of the legal steps whereby the landowner's right of possession is terminated." The trial court concluded that there was no "taking" at that time in 1970 when the plaintiff granted the city an easement and right of way across his land for a sewer. This appeal followed.

On this appeal, the city claims that the trial court erred: (1) in awarding damages for the sewer easement; (2) in adopting the opinion of the plaintiff's appraiser as to the value of his land; (3) in concluding that there was a separate agreement between the plaintiff and the city obligating the city to reimburse him for expenses incurred by him in his farm business during the sewer construction; (4) in concluding that the plaintiff was entitled to reimbursement of certain expenses

---

[3] Here the court said that it was "fully aware that in eminent domain proceedings damages to business interests are not compensable costs. . . . However, the court finds that the easement in the instant case was not 'taken' pursuant to condemnation proceedings, and that the court is therefore not precluded from recognizing such consequential damages, as the plaintiff incurred during the sewer construction period."

of his farm business as damages consequential to the taking and that he proved that such expenses were caused by the sewer construction; (5) in denying admission of a portion of a letter to the city by the plaintiff's former attorney and in refusing to permit the city to call the plaintiff to testify about that letter; (6) in denying the admission of a real estate option agreement on the issue of value and in refusing to permit the city to call the plaintiff to testify about that agreement; and (7) in denying the admission of evidence of the estimated cost of providing water service to the plaintiff's property at the time of the taking.[4] We find error.

We turn to the city's first claim, that the court erred in awarding damages for the sewer easement. The essential thrust of this claim is that because the plaintiff elected to rescind the contract he made with the city, he cannot have the benefits of rescission without assuming its burdens. Specifically, it argues that, as a condition precedent to rescission of the agreement with the city, the plaintiff must allege and prove that he had restored or offered to restore the city to its former position as nearly as possible. In arguing that there was no evidence that he had done so, the city points to the evidence that he had conveyed his interest in the property which included the right to connect to the sanitary sewer without cost. Additionally, the city claims that the plaintiff waived any right to damages

---

[4] At this point, we must observe that the plaintiff-appellee's four-page brief filed in this court is starkly deficient. See generally Practice Book § 3060G; Maltbie, Conn. App. Proc. § 325. "The cardinal principle is that the brief of each party should contain such a statement as he may think necessary to present the material points for determination by the court." Maltbie, Conn. App. Proc. § 325. Where, however, the appellee believes, as apparently is the case here, that the whole matter distills entirely into a matter of credibility of opposing appraisers, that still does not, without some risk, relieve him of the duty to respond to other claims of error properly raised and properly briefed by the appellant. The plaintiff-appellee's brief does not do this. The appellant claims that, in certain respects, matters going into the award of damages were found without evidence. There is

for the breach of the agreement by which the city acquired the easement once he elected to rescind that agreement. The plaintiff having so elected that remedy, the city further maintains that he cannot have only the benefit of each of the optional remedies. The plaintiff's brief responds to none of these assertions.

"A definite election to rescind a contract is final and operates as a waiver of any claim for damages for any breach of the contract." *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 266, 320 A.2d 811 (1973). "As a condition precedent to a rescission, the [plaintiff was] required to allege and prove that [he] had restored or offered to restore [the city] to its former condition as nearly as possible. *Mandeville* v. *Jacobson,* 122 Conn. 429, 433, 189 A. 596 [1937]; *Loveland* v. *Aymett's Auto Arcade, Inc.,* 121 Conn. 231, 236, 184 A. 376 [1936]; *Bitondi* v. *Sheketoff,* 91 Conn. 123, 126, 99 A. 505 [1916]; 5 Corbin, Contracts § 1114." *Keyes* v. *Brown,* 155 Conn. 469, 476, 232 A.2d 486 (1967). There is nothing in the record, which we can find or to which the plaintiff has referred us, to indicate that the plaintiff has either alleged[5] or offered any evidence

no response by the plaintiff-appellee by way of referring to the transcript of evidence in his brief. See *Hartford National Bank & Trust Co.* v. *DiFazio,* 177 Conn. 34, 39–40, 411 A.2d 8 (1979); *Jennings* v. *Reale Construction Co.,* 175 Conn. 16, 18–20, 392 A.2d 962 (1978). His brief does not contain one citation to the transcript (over 900 pages in length) to aid this court in examining the merits of the appeal. Practice Book § 3060G. In a consolidated case involving a number of volumes of record in which the United States Court of Appeals for the Fifth Circuit stated that the government's brief in one case was "seriously deficient in citations to the record," it also observed "our complaint is no quibble and the danger to the parties is quite real. We do not want to see such briefs again." *United States* v. *Partin,* 552 F.2d 621, 633 n.14, (5th Cir.), cert. denied, 434 U.S. 903, 98 S. Ct. 298, 54 L. Ed. 2d 189 (1977). These observations are pertinent here.

[5] We are not prepared to say in this case which has been in the courts for over ten years that the failure to allege the satisfaction of this condition precedent to a rescission prevented his proceeding on that option. Putting aside the lack of any pleading electing rescission, the transcript discloses no evidence which, if credited, would demonstrate that the plaintiff even attempted to comply with this predicate of a rescission.

to prove that he has satisfied this condition precedent to the right to rescind. There can be no serious question that the right given in the easement grant of May 11, 1970, to the plaintiff and "his heirs, executors, administrators and assigns" to tie into the sanitary sewer without any cost was a valuable right. During the trial, a quitclaim deed of the subject property from the plaintiff to a corporate grantee (a family corporation owned by the plaintiff and his sons), which was executed, delivered and recorded in early 1974, was admitted as a full exhibit.[6]

The trial court decided that the plaintiff did not elect to pursue the second option, i.e., to receive damages equal to the difference between the actual value of the right to tie in and the value as represented, but instead put on appraisal testimony to establish the value of the property before and after the taking of the permanent easement. It rejected the city's claim that the court treat the issue of damages as in "a straight condemnation proceeding" by establishing the land value before and after the "taking" and "disallowing any other claims for damages such as those attributable to the interruption of the plaintiff's farming operation."

---

[6] The city offered this deed under a special defense which claimed essentially that the plaintiff could not rescind the easement agreement because he had previously conveyed away the right, which ran with the land, to connect his premises to the sanitary sewer system without a charge. Thus, it was the city's claim that because the plaintiff was unable to restore the city to its former position, he could not rescind. Although it was not in evidence at the trial, at oral argument before us counsel for the city represented that the "subsequent owner" had connected with the sanitary sewer without cost.

It is fair to state that, from what occurred at the trial, when this deed was offered by the defendant, the plaintiff's counsel indicated that it involved land "that Mr. Duksa [the plaintiff] deeded . . . to a family held corporation, [of] which Mr. Duksa is president . . . ." At oral argument before us, the plaintiff's counsel stated that the corporate grantee was a corporation owned by the plaintiff and his sons and that this transfer was not an "actual sale." The plaintiff's present counsel did not appear in this case until some years after this deed had been executed and recorded.

It opined that there was no "taking" under our law at the time the plaintiff granted the easement in 1970. It also said that "the easement . . . was not 'taken' pursuant to condemnation proceedings, and . . . therefore [the court is] not precluded from recognizing [those] consequential damages [to his dairy farming operation which] . . . the plaintiff incurred during the sewer construction period." We disagree. This easement was a "taking" since it was the accomplishment of the critical legal step terminating the plaintiff's right of possession even though he had not been physically dispossessed. *Slavitt* v. *Ives,* 163 Conn. 198, 206, 303 A.2d 13 (1972); *Clark* v. *Cox,* 134 Conn. 226, 228–29, 56 A.2d 512 (1947). There was, therefore, a "taking" by the city from the plaintiff on May 11, 1970, the date the easement was given by him.[7] Moreover, May 11, 1970, was the date used by David Collins, the plaintiff's sole appraisal expert, in his testimony and his written real estate report as the critical date upon which he based his opinions of the before and after value of the plaintiff's property.[8] Although the trial court said there was no "taking," its memorandum of decision adopted Collins' opinion that the land had diminished $59,200[9] in value based upon a before and after May 11, 1970, approach. This certainly was the theory upon which the plaintiff proceeded at the trial on the valua-

[7] The easement, which was executed on May 11, 1970, was recorded on June 10, 1970, in the Middletown land records. Significantly, this "Grant of Easement and Right of Way" was not only signed by the plaintiff, but also by the mayor of the defendant city. The latter represented in that document that, as mayor, he was authorized to sign it and to grant the plaintiff and his successors the right to connect to the sewer without any assessment by the city.

[8] Collins' opinion was that as of May 11, 1970, the fair market value of the property was $351,700. He also testified that that value was $292,500 after the taking. The difference is $59,200.

[9] The figure of $59,200 together with the $26,098 which the court found to be the plaintiff's costs and losses attributable to the period of the sewer construction came to $85,298, which was the amount of damages awarded the plaintiff by the trial court.

tion of the real property. See *Machiz v. Homer Harmon, Inc.,* 146 Conn. 523, 525, 152 A.2d 629 (1959); Maltbie, Conn. App. Proc. § 42.

Despite this approach, the court adopted a hybrid approach in awarding damages. It spoke in terms of rescission in its before and after award of damages for the real estate on the one hand, and, on the other hand, in terms of "consequential damages" for the losses claimed to the farming operation. Although the plaintiff's brief is not illuminating here, in oral argument before us the plaintiff's counsel minimized the issue of rescission stating that he approached the matter on remand as if it were a simple condemnation matter. He also maintained before us that, even if rescission of the easement grant were pursued, the so-called "separate agreement,"[10] signed by Frank Opalacz on behalf of the city on the same day as the easement and which provided that the city would pay damages to the owner for injury to his property, crops or inconvenience as a result of the installation of the sewer interceptor, need not also be rescinded.

[10] This "separate agreement," which was full exhibit G, was the basis upon which the trial court awarded the plaintiff $26,098 in "consequential damages."

The "separate agreement" was the following:

"5/11/70

| "Frank J. Opalacz | Middletown Industrial Park |
| "Director of Water & Sewer | Contract No. 1 |
| "City of Middletown | Sewer Interceptor |
| "Middletown, Conn. 06457 | |

"The City of Middletown will pay damages to the owner for injury to property, crops and inconvenience that has caused him monetary loss as a result of the installation of the sewer interceptor when such damage is caused by the City of Middletown, its agents or contractors.

"The owner should notify the Director of Water & Sewer immediately when damage or injury to property and crops have occurred.

"Claims against the City of Middletown will terminate 90 days after sewer interceptor [h]as been accepted by the City of Middletown.

"Frank J. Opalacz, Director

"5/11/70."

The defendant Frank Opalacz was the person in charge of acquiring easements for the defendant city.

It is readily evident that defense counsel, on a number of occasions at the trial, took the position that the plaintiff, having elected to go forward on rescission, should not be permitted to introduce certain evidence or make certain other claims.[11] Our examination of the transcript, fairly viewed, persuades us that as to the damages to the realty itself, for which the court accepted the before and after valuations of the plaintiff's appraiser in its award of damages on that phase, the plaintiff proceeded on a rescission course. It is likewise evident from that examination that as to the "consequential damage" portion of the court's award of damages to the farming operation, the plaintiff proceeded on the theory that the "separate agreement" permitted damages in addition to those recoverable in rescission.

[11] Just prior to beginning his cross-examination of Collins (the plaintiff's appraiser), the defendant's counsel said: "Before I proceed, Your Honor, one thing I forgot to clarify. It wouldn't be significant, except that prior history in this case—We had a short discussion and prior to the commencement of the hearing, it was my understanding that the Plaintiff was proceeding on the remedy of recision [sic], and seeking damages, rather than some other remedy that may or may not be available to him.
"The Court: Let the record so show."
He also objected unsuccessfully during the plaintiff's direct testimony to the admission into evidence of exhibit G as a "separate agreement." The plaintiff claimed it under a post-*Duksa I* amendment of the pleadings that "in consequence of the erection of the embankment . . . Plaintiff suffered further damages . . . in the amount of $ . . . ." Defense counsel also claimed surprise in the claim because exhibit G was now claimed as a "separate agreement" under the post-*Duksa I* amendment for the recovery of damages to the farming operation and that it was not even referred to in pleadings.
Shortly thereafter, defense counsel moved unsuccessfully to exclude any evidence "as to the interference with the carrying on of his business, as being not a compensable, separate compensable item in a condemnation action where the damages, I understood, this was to be treated like a condemnation, the taking of a property, The value of the property is one thing. Here he's seeking consequential damages to the taking of the easement area, as opposed to the actual taking." He argued that there was no "separate agreement," that the plaintiff was proceeding in rescission, and that he had to rescind in full or "affirm the whole thing" but that he could not

This case must be remanded to the trial court for a new hearing in damages; the present award of damages cannot stand.[12] First, the trial court accepted Collins' before and after values which indicates that it too regarded the matter as one in rescission, thus treating the parties as if there were no grant of the easement and that a condemnation had occurred. In the determination of damages by the "before and after rule," the court must determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter.[13] See *Plunske* v. *Wood,* 171 Conn. 280, 283, 370 A.2d 920 (1976); *Meriden* v. *Ives,* 165 Conn. 768,

"split this up into separate elements." Later, the court indicated that "over and above [the options of rescission or affirmance referred to in our *Duksa I* decision] you have this damage aspect which the court had indicated we will take as a separate."

Still later, defense counsel moved the court to make a determination or finding on the question of whether, as he claimed, the plaintiff was proceeding on rescission. The court refused to do so. He persisted in his claim that the plaintiff was proceeding in rescission and that there was no "separate agreement." Repeating an argument he made earlier, he claimed that because the plaintiff had rescinded he could not, on the one hand, claim damages on a before and after basis where his expert said the highest and best use of the real property was future industrial development and, on the other hand, in contrast to his condemnation posture, claim any consequential damages to its use as a dairy farm.

[12] We do not need to explore at any length the components of the opinion of Collins, the plaintiff's appraiser, because we conclude that the legal antecedents for the availability of rescission to the plaintiff were not fulfilled.

[13] The plaintiff on remand will have an opportunity to prove the damages for the part taken as well as any claimed on the remainder which resulted from the taking. See *D'Addario* v. *Commissioner of Transportation,* 180 Conn. 355, 363, 429 A.2d 890 (1980), where we said: " 'When only a part of a tract of land is taken for the public use, "just compensation" includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. . . . The use to be made of the land taken is to be considered with regard to its effect on the remaining land, and the fact that injuries are caused by the construction activities of the contractor is not a bar to recovery so long as the damages foreseeably follow such construction activities and are a necessary, natural and proximate result of the taking.' *D'Addario I [D'Addario* v. *Commissioner of Transportation,* 172 Conn. 182, 184–85, 374 A.2d 163 (1976)]."

770–71, 345 A.2d 13 (1974); *Lefebvre* v. *Cox,* 129 Conn. 262, 265, 28 A.2d 5 (1942). Although the trial court applied this formula, it did so not only where the plaintiff had not restored the parties to status quo before the taking, but also where he had not even attempted to do so as nearly as possible. See, e.g., *Milford Yacht Realty Co.* v. *Milford Yacht Club, Inc.,* 136 Conn. 544, 549, 72 A.2d 482 (1950); *Mandeville* v. *Jacobson,* 122 Conn. 429, 433, 189 A. 596 (1937); 3 Black, Rescission and Cancellation (2d Ed.) § 617. Indeed, the plaintiff had transferred the property before the rehearing together with the right he had obtained from the city to tie into the sanitary sewer without cost. There is no indication of this in the trial court's memorandum of decision, let alone any adjustment offered by the plaintiff in favor of the city for the value of the right to tie in without cost. In a word, the plaintiff neither alleged[14] nor proved he "had restored or offered to restore [the city] to its former condition as nearly as possible." *Keyes* v. *Brown,* 155 Conn. 469, 476, 232 A.2d 486 (1967); *Mandeville* v. *Jacobson,* supra.[15]

---

[14] Actually, after our remand in *Duksa I,* the plaintiff amended his pleadings by adding a paragraph to his complaint that alleged in part that "[a]s a result of the misrepresentation as to the value of the easement to the plaintiff as against the actual value (loss) to the plaintiff, plaintiff suffered losses in the amount of $          by reason of the grant of said easement; and in consequence of the erection of the embankment in part of said easement, plaintiff suffered further damages in the operation of his farm in the amount of $          . . . ."

[15] There is authority for the view that "when the value of property consumed or disposed of can be definitely ascertained, the party entitled to rescind the contract may do so on tendering such value, though he cannot place the other party in status quo by restoring the property itself." 3 Black, Rescission and Cancellation (2d Ed.) § 627, and cases there cited. In addition, one court has opined that the requirement of restoration is not enforced with "unvarying strictness" and although "traditionally" this requirement has been enforced to permit an equitable adjustment of the dispute, "[i]t is never so applied to create a shield for wrongdoing." *Williams* v. *Macchio,* 69 Misc. 2d 94, 97, 329 N.Y.S.2d 405 (1972).

The defendant claims here that insofar as the plaintiff was entitled to prove damages for breach of the easement agreement, such damages have been waived because he elected to rescind the easement agreement rather than electing to affirm and sue for damages for breach of the easement agreement or for misrepresentation. There is merit to this claim where there has been a rescission.

" 'He who elects to rescind a contract can claim nothing under it.' *Jones* v. *Brinsmade,* 183 N.Y. 258, 262, 76 N.E. 22 [1905]; *Valente* v. *Weinberg,* 80 Conn. 134, 135, 67 Atl. 369 [1907]; *Janulewycz* v. *Quagliano,* 88 Conn. 60, 64, 89 Atl. 897 [1914]; 3 Black, Rescission (2d Ed.), § 704; Restatement, 2 Contracts, § 410, comment b, illustration 2; 12 Am. Jur. 1019, 1038; 13 C.J. 623, § 684; 17 C.J.S. 925, § 441. A definite election to rescind a contract is final and operates as a waiver of the right to sue in damages. 5 Page, Contracts, § 3030." *Haaser* v. *A. C. Lehmann Co.,* 130 Conn. 219, 221, 33 A.2d 135 (1943); see *Gordon* v. *Indusco Management Corporation,* supra, 266.

The problem presented here is that the parties disagreed as to what the agreement was that had to be rescinded. The city argues that there was only one agreement between the plaintiff and the city and that was embodied by the easement grant and the memorandum signed by Opalacz concerning the payment of damages to the plaintiff during the construction of the sewer on his property, both of which were executed on May 11, 1970. It argues that in order to have a valid rescission, "both" of these had to be rescinded. The plaintiff maintains that the latter was a valid "separate agreement." It is evident that the trial court, after endorsing the rescission approach with its before and after award, agreed with the plaintiff on his "separate agreement" claim by its award of "consequential damages" in the amount of $26,098.

In its brief, the city claims that there was no evidence to support the trial court's conclusion that there was a "separate agreement" between the plaintiff and the defendant. The plaintiff does not print or refer[16] to any evidence in his brief in answer to this claim. See Practice Book § 3060G. The burden of printing or referring to such evidence here is upon the plaintiff. See Practice Book § 3060G; *Hartford National Bank & Trust Co.* v. *DiFazio,* 177 Conn. 34, 40, 411 A.2d 8 (1979); *Slattery* v. *Maykut,* 176 Conn. 147, 149, 405 A.2d 76 (1978); *Morningside Assn.* v. *Morningside Development, Inc.,* 172 Conn. 60, 62, 372 A.2d 141 (1976). Thus, the conclusion that there was a "separate agreement" cannot stand.

" 'On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book § 3060D. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous.' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct

---

[16] As we have previously pointed out, there is not a single reference to the transcript in the appellee's brief. "Upon appeal the parties may not rely upon any fact not supported by such references. Practice Book §§ 3060F (b), 3060G (b)." *Cahill* v. *Board of Education,* 187 Conn. 94, 108, 444 A.2d 907 (1982).

and factually supported.' Id., 222." *Rodriguez* v. *New Haven,* 183 Conn. 473, 476–77, 439 A.2d 421 (1981). This court has the power to set aside a judgment where the record discloses that the trial court did not apply the proper law to the facts before it. *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 446, 363 A.2d 103 (1975).

In view of the law of rescission which we have set forth above, the trial court erred in awarding damages since the plaintiff has not complied or attempted to comply with the conditions precedent to a recovery based on rescission. Moreover, we note that the city pleaded rescission as a special defense, offered evidence on it, and unsuccessfully asked for a finding at trial that that was the basis upon which the plaintiff was proceeding so that it could properly defend the case. In any event, the bifurcated basis for the court's award cannot stand; if the plaintiff could have proceeded on rescission, he could not on this record also have had an award based in part on a rescission theory and in part on a "separate agreement" consequential damage theory.

There is error, the judgment of June 1, 1979, is set aside and a new trial is ordered limited to the issue of damages. The new trial will proceed in rescission of the plaintiff's contract at which he may adduce evidence of the value of the entire easement on the ground that the easement had been effectively condemned and taken by the city. In the event that the plaintiff is unable to restore to the city the right to connect to the sanitary sewer without cost, an appropriate allowance should be made for this benefit which has been retained by the plaintiff in any award of damages he may receive.

In this opinion the other judges concurred.