[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff brings this action under a two count complaint. The first count alleges that the defendants City of New Haven, and Mayor DeLieto, [hereinafter The City] breached the Contract [hereinafter The Contract] dated December 12, 1986 between the City and Maurice Hansen and Samuel Hansen d/b/a Hansen Movers [hereinafter Hansen].
The First Count alleges that Hansen and the City contracted for a period of December 1, 1986 to December 1, 1987 for moving and storage services to remove evictees' goods. Hansen alleges that it fully performed its duties under the Contract and did the work up through November 30, 1987. Hansen was paid only $5,000 and that there is due under the Contract yet unpaid the sum of $177,000 itemized as $150,000 for transportation charges, $22,000 for bin construction and $5,000 for maintenance fees.
In the Second Count Hansen inter alia alleges that the defendant is unjustly enriched in the amount of $177,000.
The Plaintiff argues that it is suing for breach of contract in the first count and restitution in the second count of the complaint.
The Defendant argues that the Plaintiff seeks additional compensation under the Contract contrary to the express terms thereof. The Defendant claims by way of Special Defense that the CT Page 1757 Plaintiff breached the Contract because it failed to substantially perform its duties as set forth in the Contract; that this action is barred by the applicable statute of limitations; and that said Contract was properly rescinded. The Plaintiff's Reply to the Defendant's Special Defense denies that it failed to substantially perform the scope of services; that the action is barred by the Statute of Limitations; and denies the Contract was properly rescinded.
The City filed a Counterclaim for damages dated May 19, 1993 alleging inter alia that the Plaintiff breached the Contract and that the Plaintiff failed to immediately correct the problems. Hansen denies the, allegations that it breached the terms of the Contract; and by way of Special Defense asserts that the City waived its right to sue because it failed to provide written notice pursuant to Part II of the Contract and accordingly is estopped from pursuing a Counterclaim.
At the outset the Court finds that the City Special Defense of the Statute of Limitations need not be addressed since the City failed to brief such claim and it is accordingly deemed abandoned.
The first issue to be decided is the Second Count as to whether the Plaintiff, Hansen, is entitled to its claim of unjust enrichment.
In Montanaro v. Snow, 4CA53 the Court stated:
 "Unjust enrichment is a legal doctrine to be applied when no remedy is available to a contract 5 Williston, Contracts (Rev. Ed.) 1479. In order for the Plaintiff to recover under the doctrine, it must be shown that the defendants were benefitted [benefited], that the benefit was unjust in that it was not paid for by the defendants and that failure of payment operated to the detriment of the Plaintiff (citations omitted)."
In a claim for restitution the trial court may balance the equities and take into account "a variety of competing principles to determine whether the Defendant has been unjustly enriched" [citation omitted]. To prove unjust enrichment the Plaintiff must basically show that the Defendant sustained a net gain. Montanaro, Id. p. 46. CT Page 1758
The Plaintiff in this case failed to prove that the City received a net gain from the work and responsibilities it took on for the City. This Contract was negotiated between Hansen, a moving and storage firm with more than 60 years experience and the City pursuant to the City's duty to remove, store and dispose of evictee's goods on the sidewalk under Connecticut General Statutes47a-42.[1]
Both the City and Hansen who signed the Contract agreed to be bound by the expressed terms of the contract. There is no claim made in the complaint that Hansen was induced by fraud, mistake or inadvertence in entering into this Contract. The Plaintiffs' cite of Hacker v. City of New Britain is inapplicable to the facts of this case. The evidence adduced was that Hansen was given the right to use storage facilities for other towns' evictee's goods and did in fact utilize such storage facilities. Hansen who now finds himself as having made a bad deal, wants this Court to rewrite the Contract.
The Court concludes that Hansen failed to prove that the City was unjustly enriched because Hansen did not receive the benefits he expected when he entered into the Contract. Hansen turned the keys to the warehouses back to the City in June 1987 but continued to move and transport evictee's goods for them.
On September 14, 1987, Hansen by letter through his attorney rescinded the Contract. Quoting from said letter: (Plaintiff's Exhibit B)
 "This letter is to advise you that Mr. Hansen considers this contract null and void, and will not in the future be bound by its terms and conditions. As you know, at the time of the execution of this contract, it was the opinion and belief of both parties that Mr. Hansen would receive compensation for his services through the State of Connecticut. Due to this mutual mistake, Mr. Hansen has been put in the position where he had received virtually no compensation for his services under the contract, and if this state of affairs continues, he will be financially unable to perform the services required by the City. (Emphasis added) CT Page 1759
 An additional problem has arisen regarding the number of moves and storage of the evictees' goods. As you know, Mr. Hansen had the use of a warehouse leased by the City on Grand Avenue. Due to the unexpected and unforeseen number of moves during the last nine months, this storage facility as well as all other facilities to which Mr. Hansen has access are completely filled. He has nowhere to store the additional goods which he is obliged to move and store.
 Because of these mutual mistakes and unforeseen changes in circumstances, Mr. Hansen believes that he is justified in rescinding the contract and avoiding any further legal obligation to the City. This letter is also to advise you, however, that until such time as this contract is rebid and awarded in some other form either to Mr. Hansen or some other party, Mr. Hansen will continue to perform the services and duties required of him under the contract insofar as he has the storage capacities to do so. His compensation for these services from this day forward must be set at the State rate rather than as per the terms of the original contract."
From the terms of the letter Hansen did not realize his expectations. The use of the warehouses were no longer available to Hansen not through any fault of the City but only because Hansen failed to maintain the warehouses by disposing of goods as required under the Contract. Nothing is alleged in the complaint as stated in the letter (Exh. B) concerning mutual mistakes. The unforeseen circumstances referred to in the letter (Exh. B) were brought about by Hansen's failure to follow the procedures for auctions or disposing of evictee's goods under the terms of the Contract. [Defendant's Exhibit 9]
Under the First Count Hansen alleges under paragraph four that it complied with it's Contract duties and that Hansen worked up through November 30, 1987, continually performing the services requested by the Defendant including moving and storage agreed CT Page 1760 upon. He claims unpaid $177,000: $150,000 for transportation charges, $22,000 owed for bin construction and $5,000 owed for maintenance fees.
The City argues at the beginning of the Contract Hansen knew that the maximum compensation under the Contract was $10,000.00 the use of two free warehouses and partial payment for the installation of a security system. Both Hansen and the City agree that the Contract did not provide for reimbursement in the event of evictee's unpaid charges. The Contract did provide however, what Hansen was required to do to obtain the expense which it failed to do.
The Court finds that Hansen rescinded the Contract on September 14, 1987 which was not accepted by the City. On October 21, 1987 the City informed Hansen that it was taking over the management of the facilities but that Hansen would continue to have access to allow for the removal of goods stored for East Haven and West Haven.
Under the terms of the Contract [Plaintiff's Exh. A] Hansen was to perform services as set forth under Section 2 in a satisfactory manner as determined by the City. The City further reserved the right to inspect the premises used by Hansen for the storage of evictee's goods.
The City reserved the right to inspect all records including those Hansen was required to keep under the terms of the Contract. The records which Hansen was required to keep were not kept properly and were disorganized.
After many complaints the City became aware that Hansen was not keeping the evictee's goods separated or properly stored. Half of the warehouses resembled a jungle of furniture, scattered and piled to the ceiling. Hansen admitted that he improperly stored the goods of evictees and used the warehouses for other towns goods, mingling it with the City's evictee's goods.
Hansen failed to conduct auctions to dispose of the evictee's goods as required under 47a-42 of the Connecticut General Statutes. In fact he had a professional conduct only four to five auctions with no accounting for the receipts. Hansen's explanation was that the auctions did not provide any meaningful receipts or that the evictees did not attend the auctions. He further testified the furniture was worthless. No notice was given to CT Page 1761 evictees although on many cases he moved them for the State of Connecticut. [See Defendant's Exhibits 7 and 8]
The Court concludes from all the credible evidence in this case that Hansen failed to perform his duties under the Contract in an organized and proper manner. From the testimony the goods of the evictees may have been worthless but it continued to stockpile the warehouses beyond an organized system expected of movers.
The Plaintiff argues that the Contract failed to provide an important term as to compensation. Hansen claimed that it was a latent ambiguity so as to allow for parole evidence. Hansen claimed that the Contract did not provide for compensation if it did not receive sufficient compensation from removal of the evictee's goods in compliance with 47a-42. The Court allowed parole evidence over the objection of the City to explain what if any recourse Hansen had in the event he was not reimbursed. The testimony of Mr. Mattison, the legal officer who drafted the Contract was that Hansen expected reimbursement from the State. [See Defendant's Exhibits 7 and 8]
It is clear from the language of the Contract that compensation was only $10,000 and the use of warehouses. It was not the responsibility of the City to spell out other contingencies in the Contract for reimbursement of charges if evictees or other purchasers at auctions failed to buy back the removed goods to sufficiently satisfy Hansen's charges. Hansen failed to conduct auctions or render any objections to the Contract until September 14, 1987 almost at the end of the term of the agreement.
Under the terms of the Contract Hansen was to be paid by the evictees for moving and storage in accordance with paragraph 303I (Plaintiff's Exh. A). Hansen was required to maintain an evictee's file and was informed to keep it substantially in the form provided. Hansen failed to properly keep such records. The Contract even provided for moving of evictee's goods within the city or in the State. The Contract further provided that auctions had to be public and at the contractors expense. The Contract provided that the contractor may dispose of any goods not sold at public auctions and for which evictees failed to pay storage and moving charges in any manner it chooses. The contractor if it decided to dispose of goods at the City's landfill, that was without charge to the contractor (Plaintiff's Exh. A — Para. 304D).
The Court concludes that Hansen's failure to include a CT Page 1762 provision in the agreement for unreimbursed charges was his responsibility. The Court will not rewrite the Contract. [See Bank of Boston v. Schlesinger, 220 Conn. 152, 159.]
Hansen's claim for costs of storage bins is also denied. Again the Contract did not provide for such payment under compensation. The Contract provided for compensation in Article 7, which stated:
 The City shall compensate the Contractor in the amount of $10,000.00 per year for the satisfactory performance of services required under Article 3 of this Agreement. The City shall also reimburse the Contractor for one half of the basic telephone services and security system connection charges upon submission by the Contractor a requisition as set forth in subparagraph 303G of the Agreement.
 In addition to the compensation provided paragraph 701, the City for satisfactory performance of the services required under Article 3 of this Agreement, will temporarily make space available to the Contractor the 240 Cedar Street, New Haven, Connecticut for 12 months commencing on December 1, 1986 and ending on November 31, 1987.
 Compensation provided under Sections 701, 702 and 303F constitutes full and complete payment for all costs assumed by the Contractor in performing this Agreement.
The Contract unequivocally states under Compensation Article 7, the monthly charge to be paid by the City and one half the basic telephone charges and security system connections as set forth in subparagraph 303G.
The claim for bins arises under Storage of Evictee's Goods 303F. The Plaintiff was aware of the need to construct bins having been in the moving and storage business for 60 years. Hansen's claim that since under 703 for compensation it included payment under 701, 702 and 303F (emphasis added) that he should be reimbursed for construction of the bins. Such a position is contrary to the express terms under compensation. The more credible evidence is that it was a typographical error referring to 303F when it was intended to be 303G. Hansen's testimony of the cost of $22,000 further is not supported by any credible evidence. CT Page 1763 No claim was ever made by Hansen until the further demand of payment for $5,000 only was rejected.
The Court however, finds that payment was not made as recited under the Contract. A $5,000 payment was accepted as partial payment. The sum of $833.34 monthly was to be paid on the first day of each calendar month. Hansen performed some services until he rescinded the contract on September 14, 1987, which the City rejected, which amounted to 9 months of the Contract. The sum of $7,500 was due under compensation of the Contract.
Accordingly, judgment may enter for the net sum of $2,500 on the First Count. The other claims are denied. Judgment may enter in favor of the City under the Second Count.
As to the Counterclaim the City recognized the problems as early as June 1987 yet permitted Hansen to continue its unsatisfactory performance. The City on October 21, 1987 notified by letter Hansen and Charles Douthat, Attorney for Hansen that the City took over both warehouses which Hansen still occupied. The City claims compensation from the Plaintiff's breach of the contract of $96,800, even though they did not rescind until October 21, 1987. They seek compensation from June 1987. They seek the costs of demolishing a warehouse and to clean up another warehouse and construction of new bins. The Court recognizes the City's position that in a contract action that, damages must be proven with some reasonable degree of certainty Southern New England Contracting Co. v. State, 165 Conn. 644, 661. The City has failed to prove that the damages it suffered was reasonably connected to the breach of contract by the Plaintiff. The City allowed the defendant to continue to move evictee's goods and use the warehouses until October 21, 1987 when they took steps to notice its rescission.
 "He who elects to rescind a contract can claim nothing under it (citations omitted). A definite election to rescind a contract is final and operates as a waiver of the right to sue in damages. (citations omitted)"
Duksa v. Middletown, 192 Conn. 191, 204.
The City after October 21, 1987 realized that it too made a bad deal in the selection of a contractor to meet its responsibilities under 47a-42 but it waited until that date to CT Page 1764 rescind or terminate Hansen. The Court need not address the special defense of failure to give notice under the Contract.
Accordingly, judgment may enter in favor of Hansen as to the Counterclaim.
Frank S. Meadow State Trial Referee