[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs appealed from a judgment of the court denying their application for a prejudgment remedy. The denial was by written order without a memorandum of decision. Thereafter, under section 4051 of the Rules of Appellate Procedure, the plaintiffs moved that the trial court articulate the factual basis upon which it made its decision and clarify the legal basis for its ruling. The Appellate Court referred the matter of the motion to articulate to this court, which granted the articulation motion on February 23, 1994, and indicated an articulation would be prepared in due course.
The plaintiffs, Mason Neely and Beverly A. Neely, instituted this action against defendants, The 36 Catoonah Street Company, John J. Baldaserini, and John J. Baldaserini d/b/a Homestead Realtors. The plaintiffs applied to the court for a prejudgment remedy pursuant to Connecticut General Statutes, Sec. 52-278d(a) et seq., seeking an attachment and garnishment of the defendants' property. A hearing on the application was held on January 3, 1994, at which time both parties appeared through counsel and presented evidence to support their respective positions. The application for prejudgment remedy is denied because reviewing all of the evidence and affidavit (1) there is insufficient evidence before the court as to damages as to any count to establish probable cause as to the amount of attachment; (2) as an individual defendant, Baldaserini cannot be subjected to attachment based on counts one and two sounding, respectively, in breach of a contract, and rescission of a contract between the plaintiffs and a corporation to which he was not a party; (3) a reasonable person, in light of the evidence, could not find fraud in the inducement, as pled in count 3, based on the evidence of representations made by Baldaserini about his company's status and intention to build a third phase of the development in future; (4) the fourth count premised upon a statute authorizing the Connecticut Real Estate Commission to suspend or fine an agent for his misconduct does not present a legal theory upon which probable cause can be based. That statute does not apply to the defendant company at all since there CT Page 3866 is no evidence it is a real estate agent, nor does it apply to Baldaserini because it does not create a private cause of action against a broker like Baldaserini; (5) probable cause has not been established as to the fifth count alleging a violation of the Connecticut Unfair Trade Practices Act because that is based on the same claim of misrepresentation as to future conduct found in the fraud count, and falls with it.
The plaintiffs' complaint is in five counts. The first sets out a claim for breach of contract; the second for rescission; the third claim sounds in fraud; the fourth count claims a violation of section 20-320 of the statutes; and the fifth count states a violation of General Statutes, Sec. 42-110(a), the Connecticut Unfair Trade Practices Act.
There was evidence before the court in the form of testimony that the defendant, 36 Catoonah Street Company, was a declarant of a common interest ownership property known as Cannonfield of Ridgefield. John Baldaserini was the president of the defendant company and also sole proprietor of Homestead Realtors, a real estate broker engaged to market the defendants' condominium units. The project was to be built in three phases according to the undisputed evidence. Defendant Baldaserini testified his profit would come from the sale of the units in the third and final phase.
There was also testimony at the hearing on the application for attachment of the real estate from Mr. Baldaserini indicating that at the time the plaintiffs were looking at the defendants' condominium units, eight had been built, of which only two or three were available, including unit 11 which had a size and floor plan which the plaintiffs favored. While the plaintiffs deliberated, unit 11 was sold to someone else and therefore became unavailable.
The plaintiffs ultimately came to purchase unit 13, a unit which did not contain the same floor layout and area which they found attractive in unit 11. The contract which the parties entered provided in pertinent part that:
 4. The Sellers hereby agree to repurchase this unit from the Buyers at the price of $416,400 should the Buyers elect to purchase one of Units 1 through 8 (Phase III) at Cannonfield when constructed by the Sellers. [*] Should such event take place, the Sellers hereby agree to finish a basement area not to exceed 420 square feet at 50 percent of actual costs. While the costs cannot be determined as of this date, it is to be noted that the 1990 costs for the completion of the basement of Unit #13 are approximately $40 per square foot.
[*] Purchaser agrees to permit Seller to show this unit (13) CT Page 3867 beginning 60 days prior to possession of new unit in Phase III being purchased. Seller agrees that should unit #13 sell within said 60 day period, Seller will furnish basement of Phase III unit, equal or better to unit 13, at NO COST to PURCHASER.
The unit 13 purchase occurred on November 13, 1990. There is no dispute that Phase II of the condominium project has been built with uncompleted shells awaiting buyers, but that except for sewer, water and other utilities, Phase III has not been commenced to date. The contract is silent as to a date for its completion. Mrs. Neely testified as to an oral representation that the unit in Phase III would be completed in two years. The defendant claims it will proceed with construction of Phase III containing a unit similar to the unit 11 in the first phase as soon as the market will warrant it. The plaintiffs assert that three years has now elapsed, and that an implied contractual reasonable time standard would have required an earlier completion.
The plaintiffs have the burden of proof under Connecticut's statutes and case law to establish probable cause in a hearing requesting the issuance of a prejudgment remedy. The trial court's function at the probable cause hearing is to determine whether there is probable cause to sustain the validity of the claim. Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 156-157 (1991). "The court's role in such a hearing is to determine probable success by weighing probabilities . . . to both legal and factual issues . . . . It is the trial court that must determine, in light of its assessment of the legal issues and the credibility of the witnesses [emphasis added], whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim." Id. 156-157. Probable cause must exist both as to the merits of the claim and the amount of damages. McCahill v. Town Country Associates, Ltd., 185 Conn. 37, 39 (1981). (Emphasis supplied.)
The court will first turn to whether or not probable cause has been established against the defendant company as to the amount of damages in the first count sounding in breach of contract. Assuming the plaintiffs could get over the hurdle of whether or not the contract required construction of a third phase of buildings and, if so, whether a reasonable time has already passed for performance, as to the first count sounding in breach of contract, it would still be the plaintiffs' obligation to establish probable cause as to the amount of any attachment to be authorized. In a contract action, "the award of damages is designed to place the injured party, so far as can be done by money, in the same position as he would have been in had the contract been performed." Gordon v. Indusco Management Corporation, 164 Conn. 262, 272. CT Page 3868
The contract is silent as to a sales price for the unit to be built in Phase III which the plaintiffs wanted to buy. There is nothing in the affidavit or hearing evidence which would give the court any basis to supply that missing term of the agreement if, in fact, there was any agreement about it. There is simply too little evidence either in the affidavit or the hearing testimony about the measure of damages. There wasn't evidence of the value of what was to be built in Phase III, and of the right to be bought out of unit 13 at $416,000 as opposed to the present value of that Phase I unit. Probable cause was therefore not established as to the amount of attachment under the contract claim. Furthermore, as to the individual defendant, Baldaserini, he was not a party to the contract and thus could not be chargeable for its alleged breach. There is, therefore, no legal basis to award an attachment against him based on what is pled in this count.
The court will now turn to the second count sounding in rescission. There was evidence that the plaintiffs notified 36 Catoonah Street Company of their intent to rescind on July 23, 1993, and brought this lawsuit a month later when rescission had not taken place. To seek rescission is to waive any claim for damages arising from a breach of the contract. Duksa v. Middletown, 192 Conn. 191, 197, 472 A.2d 1 (1984); Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 299. The remedy of rescission and restitution is an alternative to damages in an action for breach of contract. 12 Williston, Contracts (3d Ed. Jaeger), Sec. 1455, p. 14. The second count is an action for rescission of the contract with the defendant company. One seeking such relief waives a claim for damages arising from breach of the contract. Duksa v. Middletown, supra. Aside from that legal issue, there is no evidence as to the present valuation of the premises known as unit 13. There is a requirement that the party seeking restitution return the benefit received in the original bargain as a condition to receiving restitution. See section 384, Restatement of Contracts (Second). Since the plaintiffs have title and possession of the unit they bought, and must return as a condition of restitution, they need no security for that assets value. It would seem to this court that the plaintiffs could not continue to hold unit 13 which has value, and also claim an attachment of $425,000 which takes no account of the valuation of the unit 13 already received as a result of the conveyance for which they had originally paid $416,000. That would result in depriving the defendants of the use of whatever was to be attached without consideration of the obligation of the plaintiffs to return title to the unit 13 purchased to the defendant company, and thus a potentially excessive attachment in violation of due process requirements. Furthermore, lack of evidence of the present value of the premises known as unit 13 would deprive the defendant company of the use of whatever was to be attached even though there might be no damages. For example, the present valuation of what the plaintiffs CT Page 3869 actually received could now exceed the valuation of the $416,000 cash amount which they paid and which they seek returned to them. Probable cause has not been established as to the merits or amount with respect to 36 Catoonah Street Company. Furthermore, there is no evidence that Baldaserini, who was sued individually, was a party to the contractual agreement, and therefore no probable cause could exist as to him based on a theory of rescission.
The third count sounds in fraud. It alleges that to induce Neely to purchase unit 13, Baldaserini represented to Neely that (a) a unit which met the Neelys' specifications would be built in Phase III of the Cannonfield project; (b) Neely would be given the option to purchase such unit; and (c) should Neely exercise their option, 36 Catoonah Street Company would repurchase unit 13 from Neely for $416,000. It goes on to allege mat in reliance on these representations, Neely purchased Unit 13 Cannonfield on or about November 30, 1990 for $416,000, and that the representations were false and Baldaserini knew or should have known they were false, but nonetheless promised them that Phase III would be complete within two years in order to induce them to purchase. In weighing these probabilities to determine whether probable cause exists under this count, the court is constrained to find that it does not as to any defendant.
 A promise which relates to a future event may constitute actionable fraud if it is blended with a misrepresentation of a material fact and an evasion of the very promise, after the promisee has performed. 12 Williston Contracts (3d Ed. Jaeger), Sec. 1496, p. 374.
Kavarco v. T.J.E., Inc., supra, 294.
There is no evidence before this court, or in the inferences which could logically be drawn from it, nor in the applications supporting affidavit which would warrant a reasonable person to conclude that Baldaserini, at the time he promised to build Phase III in the future, had then no present intention to fulfill that promise, or should have known that it would not be built within two years. What evidence there is and the inferences to be drawn from it are to the contrary. At trial, fraud would have to be proved by clear and convincing evidence. Weighing the probabilities to determine whether there is a bona fide belief in the facts essential under the law for the action, such as would lead a reasonably prudent person to entertain such belief, the court concludes that it has not been established for this count. Furthermore, as already stated, there is no probable cause as to amount of the attachment. CT Page 3870
The plaintiffs claim in a fourth count that defendants violated Connecticut General Statutes, Sec. 20-320. Connecticut General Statutes, Sec. 20-320, entitled "Suspension or revocation of licenses. Fines." states in part:
 The department of consumer protection may, upon the request of the . . . commission or . . . upon the verified complaint in writing of any person, provided such complaint, or such complaint together with evidence, documentary or otherwise, presented in connection therewith, shall make out a prima facie case, investigate the actions of any real estate broker, real estate salesman or real estate appraiser or any person who assumes to act in any of such capacities within this state. The real estate commission . . . shall have the power temporarily to suspend or permanently to revoke any license . . . issued under the provisions of this chapter and, in addition to or in lieu of such suspension or revocation, may, in its discretion, impose a fine of not more than one thousand dollars for the first offense at any time when, after proceedings as provided in section 20-321. . . . [Emphasis added.]
This statute was designed to provide the Real Estate Commission with the power to suspend or revoke a broker's license under certain circumstances. Colli v. Real Estate Commission, 169 Conn. 445 (1975), and to levy fines against a broker for misconduct. It does not create a private cause of action. There is no probable cause established based on the count of the complaint pleading this statute.
The fifth count of the complaint claims a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Connecticut General Statutes, Sec.42-110a et seq. In determining whether a practice violates CUTPA, the following criteria are relevant:
 `(1) [W]hether the practice, without necessarily having been considered . . . unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness;
(2) whether it is immoral, unethical, oppressive or unscrupulous;
(3) whether it causes substantial injury to consumers. . . .'
Conaway v. Prestia, 191 Conn. 484, 492-93 (1984)
This count relies on the same factual allegation as the fraud count CT Page 3871 does, namely, that the defendants knew or should have known that the defendant company would not build Phase III. Because there really is nothing before the court to warrant a finding that a reasonable person could believe that at the time Baldaserini talked about the plans for future construction of Phase III, or signed a contract to permit the plaintiffs to buy a unit there when built, that he really intended not to do so and made that statement falsely, or should have known that it would not be built, the court does not find probable cause for a CUTPA claim.
Furthermore, apart from the failure of the plaintiffs to sustain the burden as to the merits of this count, the court has no evidence before it to conclude what the amount of the compensatory and punitive damages to the plaintiffs would be to warrant an attachment in the amount sought. There is no evidence as to attorney's fees, costs, the present valuation of the unit actually conveyed, or any reasonable basis to estimate the valuation of the value of the third phase unit to be built.
Viewing the elements of each cause of action as it relates to the parties in this case, the affidavit and evidence, the court concludes probable cause has not been established either as to the merits or the amount of the attachment sought by the plaintiffs against the defendants.
For all of these reasons, the application for prejudgment attachment is denied.
Flynn, J.