[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding sounds in contract and was brought in two counts. The first alleges specific performance of two separate contracts and the second alleges an intentional bad faith [non]performance of contractual obligations. Each of the contracts was executed on October 24, 1986 and provided for the sale of lots three (3) and seventeen (17), respectively, in a pending subdivision known as Valley View Estates in the Town of Thomaston. The documents recite a purchase price of fifty-five thousand ($55,000.00) dollars with an additional five thousand CT Page 1215 ($5,000.00) dollars due and payable in the event a sewer provision became effective, which indeed it did. It was to be payable by a deposit of one thousand ($1,000.00) dollars with an additional four thousand five hundred ($4,500.00) dollars payable upon acceptance of the lot by the prospective purchaser. The balance of forty-nine thousand five hundred ($49,500.00) dollars or a total of fifty-four thousand five hundred ($54,500.00) dollars was due and payable on the date of closing which is specified to be January 9, 1987.
The parties set forth certain conditions in the contract which recited that:
 "Sale subject to the seller obtaining final subdivision approval from the town of Thomaston by Dec. 31, 1986. Purchaser reserves the right to review final subdivision plans provided by the seller and to accept or reject lot being purchased. Inspection of such plans for rejection or approval be completed within 10 days of final subdivision approval. The following deed restrictions will be placed on deed at time of closing. (1) Minimum of 2,200 sq. ft. of living space required for all dwellings. (2) All building plans must be approved by seller. (3) No commercial vehicles, trailers or boats may be stored on property."
The defendant has denied the allegations of the complaint and filed four special defenses thereto. The first alleges that the defendant at all times was ready, willing and able to per form and so notified the plaintiff that the plaintiff failed to perform and that the defendant elected to rescind the contract. The second asserts that the defendant relied upon the plaintiff's acquiescence of the termination of the agreement and further asserts laches. The third claims the statute of limitations and the fourth alleges the statute of frauds. In addition thereto, the defendant filed a counterclaim alleging slander of title, vexatious, malicious and harassing prosecution, together with a claim for the funds represented by the deposit which had been returned to the real estate broker by the plaintiff.
Prior to the beginning of trial, the plaintiff withdrew his claim for his specific performance and proceeded on the second count only. The defendant offered his special defenses in his counterclaim and while not withdrawing the claim for the violation of the statute of limitations, he CT Page 1216 conceded his failure to offer any evidence thereon. The court finds that he did not sustain his burden of proof on the issue of the statute of frauds as well, and therefore will give neither of those defenses further consideration.
The court is persuaded that the plaintiff, by his own admission, was interested in capitalizing upon what appears to be conceded to be a preconstruction discount on the price of the lots, which discount closely approximated thirty thousand ($30,000.00) dollars. He manifested his intent to purchase and contemporaneously, or nearly contemporaneously, sell the property for such profit as he could manage under the circumstances. This scheme is referred to and characterized as "flipping the property." The linchpin of the concept requires a third party purchaser, ready, willing and able to purchase from the plaintiff.
The defendant obtained approval of this subdivision from the Thomaston Planning and Zoning Commission on December 10, 1986 and filed a map of that subdivision under the certification of an A-2 survey with the Commission's approval endorsed thereon on February 19, 1987. The initial closing between the parties on lot three (3) was consummated on April 24, 1987. The plaintiff immediately resold the property to a real estate salesman who had brought him to the property in the first instance. No closing was ever held on lot seventeen (17). It is significant to note that no evidence of the particular meaning of final subdivision approval was ever offered to the court. A plan of development (like the map filed) was presented to the purchaser in December of 1986. At that time, he, by conduct, accepted the lot under the terms of the agreement and paid the additional funds. The court is satisfied that there was indeed final approval of the subdivision, if not in December, certainly by the filing of the map with the appropriate endorsements on February 19, 1987.
The defendant offered evidence of his ability to purchase the property through disclosure of certain assets which he identified, which, if believed, would permit a finding of his ability to consummate the contract. It is inescapably established by the evidence that his willingness was drawn into issue from his own testimony on two significant factual predicates. The first of these was his declared intent to immediately resell the property and, secondly, that without an immediate purchaser, he would be clearly unable to close. The issue of his ability is framed by the contradictory testimony concerning financial problems he was having with his business arising out of alleged toxic waste problems in which the Department of Environmental CT Page 1217 Protection was involved. This court is hardly satisfied that he did in fact have the ability to purchase. It specifically finds that there is no credible evidence of that ability and that a third party was then and there ready, willing and able to immediately purchase the property from the plaintiff. "Upon conflicting evidence, it is peculiarly within the province of the trier of fact to judge the credibility of witnesses and to draw proper inferences." DeLuca v. C. W. Blakeslee Sons, Inc., 174 Conn. 535, 547; Kukanskis v. Jasut, 169 Conn. 29, 32. See Bowman v. 1477 Central Avenue Apartments, Inc., 203 Conn. 246, 257. The plaintiff's credibility on this issue hardly meets the prescribed standard.
The plaintiff's counsel has characterized the relationship between the plaintiff and the defendant as one of lack of communication or indeed monstrous miscommunication. The defendant testified about attempts to obtain information concerning the desires and closing dates from the plaintiff throughout much of the period prior to and immediately subsequent to April 24, 1987. He was convinced that the plaintiff was unable to purchase lot seventeen (17). Because of that or some other reason which might be considered lack of interest, he concluded that the plaintiff had no intention of closing upon said lot. Upon the advice of counsel, he returned the deposit which reflected the additional funds paid upon the acceptance of that lot in early May of 1987, thus effectively rescinding the contract. "[A]s a condition precedent to rescission, the parties to a contract must be restored to their original position as nearly as possible." Barco Auto Leasing Corporation v. House, 202 Conn. 106, 113, Keyes v. Brown, 155 Conn. 469-76. The plaintiff in turn attempted to nullify the defendant's rescission by returning the deposit to the broker and those funds appear to be currently retained in the broker's client funds account.
On or about June 11, 1987, the plaintiff claims to have had a purchaser ready, willing and able to purchase lot seventeen (17) from him. The identity of this so-called purchaser was disclosed and said to be a man named Duffany. Whether Duffany is a real person or a phantom was never made clear since he was not called upon by the plaintiff to testify. The defendant, once again, having previously elected to rescind the contract, was convinced that the plaintiff was neither willing nor able to purchase the property and stood upon his decision to rescind. This litigation followed.
The plaintiff has raised several issues about CT Page 1218 inland/wetlands and other imaginary problems and suggested the defendant was unable to close on the property at any particular time. He claims ignorance of the filing of the subdivision map with the necessary endorsements thereon, but is held to constructive notice on that subject. His argument that the defendant did close other contracts which had the same closing dates as his at times subsequent to June or even July, is inapposite. The defendant has convinced this court that his contract with those other purchasers who were indeed interested and willing to purchase stands in stark contrast with the lack of communication with the plaintiff. The court is satisfied from the evidence that it has heard that the plaintiff's attempt to establish any claim for damages is totally without merit. As a practical matter, his withdrawal of his assertion of his claim for specific performance has further weakened his case. A trial judge is the sole arbitrator of the credibility of witnesses and the weight to be given to specific testimony. Kimberly-Clark Corporation v. Dubno, 204 Conn. 137; Cookson v. Cookson, 201 Conn. 229,242-43; Gorra Realty, Inc. v. Jetmore, 200 Conn. 151,160. Judgment may enter for the defendant on the plaintiff's complaint.
The defendant's counterclaim alleging slander of title falls short of the mark as well. One alleging slander of title may prevail in such an action, provided the three black letter elements are satisfied: (1) the false statements are published with malice and disparagement of one's title; (2) that the person injured owns the property; and, (3) special damages or pecuniary loss result. Libel and Slander C.J.S., Sec. 205. An analysis of the evidence satisfies the court that the black letter requisites, much less any further nuances thereof, have not been met. The defendant's further claim of his right to damages represented by the amount of the deposit is not persuasive. His act of rescission in returning those funds is dispositive of that claim. A definite election to rescind a contract is final and operates as a waiver of any claim for damages for any breach of the contract. Gordon v. Indusco Management Corporation,164 Conn. 262, 266; Haaser v. A.C. Lehmann Co., 130 Conn. 219,221. He who elects to rescind a contract can claim nothing under it. Valente v. Weinberg, 80 Conn. 134, 135; Janulewycz v. Quagliano, 88 Conn. 60, 64; Duksa v. Middletown, 192 Conn. 191, 204. "A definite decision to rescind a contract is final and operates as a waiver of the right to sue for damages." Finally, the claim for vexatious, malicious and harassing litigation, as expressed by the defendant, has not been supported by the evidence. Judgment may enter for the plaintiff on the defendant's counterclaim. Costs are not taxed against either party. CT Page 1219
MORAGHAN, J.